## Henderson's Estate.

Argued April 24, 1936.    Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Harold J. Boulton,* with him *Harry Boulton* and *Charles J. Margiotti,* Attorney General, for appellant (No. 105).

*Harry Boulton* and *Harold J. Boulton,* for appellant (No. 106).

*John C. Arnold,* with him *D. Edward Chaplin,* for appellant (No. 115) and for appellees (Nos. 105 and 106).

*Benjamin C. Jones,* with him *Bell & Silberblatt* and *Chase & Chase,* for appellees.

OPINION BY MR. JUSTICE STERN, June 26, 1936:

Samuel T. Henderson died leaving a last will and testament which provided inter alia as follows:

"I give and bequeath unto my said wife, Emma C. Henderson, in trust, for and during her natural life for the purpose or purposes hereinafter stated, my thirty-three and one-third (33⅓) shares of the common capital stock of the Houtzdale Heat, Light and Power Company, . . .

"(a) I further direct that one-half of the dividends received by my said wife from the said stock shall be

retained by her for her own use, and the other one-half of said dividends shall be paid to my daughter, Mame Henderson, during her natural life. . . .

"(b) In case of a sale of the plant or business of said Company, . . . the amount received from said sale shall be invested in good securities and the proceeds or interest thereof shall be distributed in the same manner as is herein provided for distribution of dividends.

"(c) Upon the death of my said wife, Emma C. Henderson, leaving my said daughter to survive her, I direct that the said stock, shall be delivered to the First National Bank of Houtzdale, Pennsylvania, who shall hold said stock in trust and pay one-half of the dividends to my said daughter, Mame Henderson, during her natural life and the other half of said dividends to such charitable or religious organization as may be designated by my wife in her last Will and Testament, and if she fails to designate any such organization or fails to make and publish a will, then dividends formerly paid to her shall be divided equally between the First Methodist Episcopal Church of Houtzdale, Pennsylvania, and the Cottage State Hospital, Philipsburg, Pennsylvania, share and share alike.

"(d) And further I direct that upon the death of both my wife and my daughter, the said stock shall be delivered by said Trustee . . . to said charitable or religious organization so designated, and if no organization has been designated as herein provided, said stock shall be divided between the First Methodist Episcopal Church of Houtzdale, Pennsylvania, and the Cottage State Hospital, of Philipsburg, Pennsylvania."

After the death of Samuel T. Henderson, the Houtzdale Light, Heat & Power Co. sold its plant, and the 33⅓ shares of stock bequeathed in trust to Emma C. Henderson became converted into a cash fund of $41,-000, which was thereafter invested in various securities.

The trustee, Emma C. Henderson, died leaving her last will and testament wherein she provided as follows:

"I do by virtue of the power conferred upon me by said last will and testament of Samuel T. Henderson, deceased, . . . hereby name the following to receive said Trust Fund as follows:

"First Methodist Episcopal Church of Houtzdale, Pennsylvania, and the Cottage State Hospital of Philipsburg, Pennsylvania, shall each receive one-fifth ($\frac{1}{5}$) of the share to which I may be entitled of any income arising from the investment of the proceeds of the sale of said share, and upon the death of Mame Henderson, if she should survive me, the said First Methodist Episcopal Church of Houtzdale, Pennsylvania, and the Cottage State Hospital of Philipsburg, Pennsylvania, shall each receive one-sixteenth ($\frac{1}{16}$) of the principal sum.

"To the Red Cross Society of Clearfield, Pennsylvania, for welfare work in Houtzdale, Pennsylvania, twenty-two thousand dollars, . . .

"To the Home for the Aged, located at Tyrone, Pennsylvania, of the Central Pennsylvania Methodist Episcopal Conference, five thousand dollars.

"The balance of said Trust Fund to the Children's Home of Mechanicsburg, Pennsylvania, of the Central Pennsylvania Methodist Episcopal Conference. That in case the corpus of the Trust Fund shall increase or diminish in value, then and in such case the aforesaid allotments shall be in the proportion as their respective shares bear to the whole of said Trust Fund, as the same may be increased or diminished in value."

Upon the death of Emma C. Henderson the Clearfield Trust Company was appointed successor trustee. Mame Henderson, entitled to one-half of the income from the testamentary trust, is still living.

Net income from the trust investments has accumulated, and on the audit of successor trustee's account distribution thereof was awarded by the orphans' court as follows: To First Methodist Episcopal Church of Houtzdale, $\frac{1}{5}$; to Cottage State Hospital of Philipsburg, $\frac{1}{5}$; to Red Cross Society of Clearfield, $^{22}\!/_{27}$ of

$\frac{3}{5}$, or $\frac{22}{45}$; to Home for the Aged at Tyrone, $\frac{5}{27}$ of $\frac{3}{5}$, or $\frac{5}{45}$.

From this order of distribution appeals were taken by First Methodist Episcopal Church of Houtzdale and Cottage State Hospital of Philipsburg. They contend that the power of appointment was not properly exercised by Emma C. Henderson, and that therefore they are entitled to the entire income under the alternative provision in Samuel T. Henderson's will. An appeal was also taken by Children's Home of Mechanicsburg, which was not awarded any of the income by the court below.

The first point of controversy is whether Emma C. Henderson, the donee of the power of appointment, had the right to designate several organizations as beneficiaries, or whether she was limited to a single one. This question arises from the fact that the will of Samuel T. Henderson provides that the dividends which are the subject of the power shall be paid "to such charitable or religious *organization* as may be designated by my wife," thus using the singular instead of the plural form, *organizations*. We have no hesitation in arriving at the conclusion that the power of appointment permitted the naming of several organizations. Cases are not uncommon in documentary as well as statutory interpretation where the law construes the singular to include the plural. In the present case the criterion of construction is the intent of the testator, and a reading of the will leads fairly to the conclusion that the testator had no particular desire that only one beneficiary should be named, but merely that the class of organizations from which selection was to be made should be limited to those in the domain of charity and religion. He himself provides that in case the power of appointment were not exercised the income should be distributed between two institutions which he designated, one of which was a charitable and the other a religious organization.

The real difficulty in the case arises from the unfortunate manner in which Emma C. Henderson expressed her intent in exercising the power of appointment. In the case of Methodist Episcopal Church of Houtzdale and Cottage State Hospital of Philipsburg, she designates a proportional share of income and another share of principal to which they shall each be entitled; in the case of Red Cross Society of Clearfield and Home for Aged at Tyrone she appoints for each a lump sum without clearly indicating whether the amounts thus appointed are to be paid out of income or principal, or to what extent out of each. To the Children's Home of Mechanicsburg she gives the entire balance of the fund.

We agree with the court below that when Emma C. Henderson, in exercising the power of appointment, named "the following to receive said *Trust Fund*," she meant the words "trust fund" to include not only the principal but all the income arising therefrom. When in her will she desires to refer merely to principal, as distinct from income, she does not use the general term "trust fund," but either "principal sum" or *"corpus* of the trust fund."

It is also clear that although she gives definite sums to the Red Cross Society and the Home for the Aged, and the general balance to the Children's Home of Mechanicsburg, she did not intend these respective allotments to be appointments of fixed amounts, but wanted the beneficiaries to receive certain proportions of the entire fund just as if she had designated their shares in terms of percentages as she did in the case of the First Methodist Episcopal Church and the Cottage State Hospital. This appears from the provision that the allotments should vary according to any increase or diminution in value of the corpus of the trust fund. She had in contemplation that she was disposing of a principal of $41,000; she expressly refers in her will to that amount. After allotting $\frac{1}{16}$ of this principal to First Methodist Episcopal Church and $\frac{1}{16}$

to Cottage State Hospital, what she really gives to the Red Cross Society is, not $22,000, but $^{22}/_{41}$ of the principal, and to the Home for the Aged, not $5,000, but $^{5}/_{41}$ of the principal, and the "balance," to wit, $^{71}/_{328}$, of the principal to the Children's Home.

While it was necessary thus to determine the proportions of allotments of principal in order properly to ascertain the donee's intent in regard to the appointment of the income, it is the latter which is the primary object of investigation in the controversy arising out of Emma C. Henderson's exercise of the power of appointment. As to the income there is no difficulty in respect to two of the beneficiaries—First Methodist Episcopal Church and Cottage State Hospital—because she expressly allots to each of them a share of one-fifth. The real question is as to the remaining three-fifths. The fair assumption seems to be that the donee intended the other three beneficiaries to prorate the remaining three-fifths of the income in the same proportions as the principal was allotted to them. This conclusion would appear reasonable from the fact that, in the case of the two beneficiaries as to which she wished to make a distinction between shares of income and of principal, she explicitly so provided, and in the absence of an expressed intent to the contrary the deduction that she intended a prorating of the remaining income in the same proportions as the allotments of principal would seem to be warranted by natural inference. The court below arrived at this same conclusion, but for a reason not clear failed to apply it to the case of the Children's Home or to recognize that institution as a beneficiary of the appointment of the income.

It follows from this analysis that the income for distribution should be awarded as follows: To the First Methodist Episcopal Church $^{1}/_{5}$, to the Cottage State Hospital $^{1}/_{5}$, to the Red Cross Society $^{176}/_{287}$ of $^{3}/_{5}$, to the Home for the Aged $^{40}/_{287}$ of $^{3}/_{5}$, and to the Children's Home $^{71}/_{287}$ of $^{3}/_{5}$.

While at the present time the corpus of the fund is not before the court for distribution, it may be well to call attention to the fact that while, in order to ascertain the intent of Emma C. Henderson, we have considered as a factor her appointment of $\frac{1}{16}$ of the principal to First Methodist Episcopal Church and $\frac{1}{16}$ to Cottage State Hospital, there is a serious question as to whether she had the right to give to these institutions any shares of principal different from the proportions established by her as to the income. It will be noted that in the will of Samuel T. Henderson he confers upon his wife no power of appointment of the principal but only of the income. He provides that the trust fund, upon the death of his daughter, is to be "delivered . . . to *said* charitable or religious organization *so designated.*" In other words, the beneficiary of the principal is determined automatically by the designation of the beneficiary of the income, and there is apparently no power given to the donee to award the principal to beneficiaries of her own selection other than those to which she appoints the income. From this it would seem to follow that the proportion of principal to be received by each beneficiary must be the same as the proportion of income to such beneficiary, for otherwise the intent of the original testator that the same organizations which receive the income should receive the principal could in effect be easily circumvented. The question will therefore ultimately arise whether First Methodist Church and Cottage State Hospital, having each been appointed to receive $\frac{1}{5}$ of the income, are therefore each entitled, not to $\frac{1}{16}$, but to $\frac{1}{5}$ of the principal, the shares of principal to be received by the other three beneficiaries being correspondingly reduced.

As herein modified, the order of distribution made by the court below is affirmed, costs to be paid out of the estate.