## Schautz Trust.

Argued May 4, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

C. H. Welles, 3rd, for appellants.

J. Julius Levy, with him John W. Bour, and Levy, Mattes, Preate and McNulty, for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 28, 1959:

On July 31, 1937, Mrs. Phenie L. Schautz entered into an inter vivos trust with the Scranton Lackawanna Trust Company (now the First National Bank and Trust Company of Scranton) whereby, after her death, the Trustee was to pay the net income of her estate to her husband for the term of his natural life, and then, upon his death,[1] according to the Third Paragraph of the trust agreement, "the Trustee shall pay, transfer and distribute the corpus of the Trust Estate (or the remaining portion thereof, should any of the corpus have been distributed as hereinafter provided) to Walter J. Schautz, Arthur G. Schautz, George J. Schautz, Jr., and Helen M. Boyle, children of the Donor in equal proportions."

The Ninth Paragraph of the Trust Agreement guaranteed to Mrs. Schautz revocation rights as follows: "It is understood and agreed by the parties hereto that

---

[1] (The husband died on June 23, 1946).

this trust is made subject to the right which is hereby specifically reserved to the Donor to terminate and revoke the same at any time upon sixty (60) days' notice in writing thereof to the Trustee, and upon such termination or revocation, the Trustee shall assign, transfer and deliver the trust estate, both principal and accumulated income, if any, to the Donor freed and discharged of any trust whatsoever."

Acting under this revocation clause, Mrs. Schautz on April 25, 1955, revoked the Third Paragraph of the Trust Agreement by stating: "1. That the Third Paragraph of said Trust Agreement as previously amended[2] has been revoked in its entirety and that said Trust Agreement is now amended to read as follows:"

Whereupon there was substituted a new paragraph which, by the process of omission, excluded Arthur G. Schautz and Walter L. Schautz, and made George J. Schautz, Jr., and Helen M. Boyle, the sole beneficiaries of the corpus of the estate.

After setting forth the new Third Paragraph, the instrument declared: "That all other terms and conditions of said Trust Agreement to remain unchanged and are hereby ratified and confirmed and are to remain in full force and effect."

When Mrs. Schautz died on December 13, 1957, leaving her four children to survive her, the Trustee, following out the provisions of the new Third Paragraph, petitioned the Orphans' Court of Lackawanna County to award the principal and income of the trust estate to Helen M. Boyle and George J. Schautz.

The disinherited two children, Walter and Arthur Schautz, objected to the proposed distribution, averring that their mother had no power to exclude them

---

[2] The previous amendment merely provided that any indebtedness due from the children to the Trustee should be deducted from their share, and in no way is involved in this litigation.

from the benefits of the trust estate. They specifically declared that while their mother reserved the right under the Ninth Paragraph of the Trust Agreement to revoke the agreement in toto, she could not alter it by amendment and that, therefore, they being two of the original beneficiaries, they were entitled to share in the distribution equally with their brother George J. Schautz, Jr., and their sister Helen M. Boyle.

President Judge BRADY of the Lackawanna County Orphans' Court agreed with this contention and on June 6, 1958 filed an adjudication in which he declared the instrument of April 25, 1955 ineffective. However, after exceptions to the adjudication were filed, President Judge BRADY altered his original view and then said: "Further study and perceptive analysis of the agreement of April 25, 1955 impels the court to say it was unduly impressed with the form, rather than the substance of it. This occurred because the agreement, unfortunately, thrice uses the word 'amended.' He then went on to say that the deed of April 25, 1955 "was a termination and revocation of the original trust agreement and the creation of a new deed of trust wherein George J. Schautz, Jr., and Helen M. Boyle were designated sole beneficiaries," and he thus decreed distribution to them in equal shares.

Although the lower court is to be commended for its open-mindedness in approaching a revision of its original adjudication and in arriving at a correct conclusion in the end, we cannot agree with its reasoning that the instrument of April 25, 1955 constituted a revocation of the original agreement and that Mrs. Schautz, in effect, rewrote the trust agreement.

It is not enough that a court reach a proper result. The route it follows in reaching the destination is quite important because, if the route is circuitous and unreliable, those who follow may become lost and not come

out at the point headed for. Thus, we must point out the error in the reasoning processes of the learned court below.

Mrs. Schautz did not in Paragraph 9 of the original trust agreement limit herself to only a complete revocation nor did she in her deed of April, 1955, actually *completely* revoke the original trust agreement. In fact, in her later pronouncement she specifically stated that she intended only to "amend" the trust agreement by revoking the third paragraph and substituting another in its place. All the other terms and conditions were to "remain unchanged" and they were "ratified and confirmed" and were "to remain in full force and effect." It is obvious that this language cannot be interpreted as meaning a complete displacement of the original agreement by another one entirely different.

The court below construed the Ninth Paragraph of the Trust Agreement as permitting Mrs. Schautz to revoke the trust only "in its entirety" and applied the rule set forth in Section 331 of the Restatement, Trusts, and Section 331 of Scott on Trusts, that where a settlor merely reserves the power to revoke the trust "as an entirety" he has no power to partially revoke or modify the terms of the trust. It is our opinion, however, and we so hold, that the indicated rule applies only where the settlor limits, expressly or by inescapable logic his power to revoke the trust "as an entirety" or "as a whole" or "in toto" or in any other language achieving the same effect.

In fact, when the rule is mentioned in the Restatement, Trusts and in Scott on Trusts, the term "as an entirety" is placed in quotation marks, indicating that it is being quoted from a trust agreement. In the case of *National Newark & Essex Banking Co. v. Rosahl,* 97 N. J. Equity, 74, where the rule was applied, the

Court made clear that the trust agreement specifically provided that "the right reserved to the trustor was to 'revoke as an entirety this deed of trust'". The court then went on to say that "the language of the reservation" did not admit of a power to modify by implication.

In the case at bar we have an entirely different situation. The Trust Agreement does not say that it can be revoked only in its entirety. It does say, it is true, that upon the donor's "termination or revocation, the Trustee shall assign, transfer and deliver the trust estate, both principal and accumulated income, if any, to the Donor freed and discharged of any trust whatsoever." But this is only a direction as to what shall happen to the proceeds of the trust in the event there actually is a total revocation. The language employed does not prohibit the donor from revoking in any way she sees fit. Unless there is an express restriction, or one by necessary implication, that the donor may revoke only in toto, all doubts are to be resolved in favor of the donor whose property has become the subject of the trust. There is nothing in the original Trust Agreement which compels the interpretation that Mrs. Schautz could change the beneficiaries of the trust only by first wiping clean the slate of her benefactions and re-enumerating those she decided to favor with her bounty.

Deciding as we do that the Donor's power to revoke was general and not limited to a slate-cleaning revocation, we come to the next question: Does the general power to revoke carry with it the power to amend the trust agreement? Section 331, Comment g of the Restatement, Trusts, provides: "Whether power to revoke includes power to modify. It is a question of interpretation to be determined in view of the language

used and all the circumstances whether a power to revoke the trust includes a power to modify it. *Ordinarily a general power to revoke the trust will be interpreted as authorizing the settlor not only to revoke the trust in part by withdrawing a part of the trust property from the trust* (see section 330, Comment n), *but also to modify the terms of the trust, and it will be unnecessary for the settlor first to revoke the trust and then to create a new trust."* (Emphasis supplied)

In Stephenson on Drafting Wills and Trust Agreements, §15.3, page 322, we find: "Trust Agreement silent as to amendment only. If, however, the settlor, having failed to reserve the power to amend his trust agreement, did reserve the power to revoke the trust, then for all practical purposes, he would have the power to amend. That is to say, he could revoke his trust and then create a new trust differing from his original trust in any respect he desired. *Instead of requiring the settlor to take both these steps, in most states he is permitted to amend a revocable trust on the theory that the power to revoke implies the power to amend."* (Emphasis supplied)

Nossaman on Trust, §306, page 289, says: "Ordinarily a general power to revoke the trust will be interpreted as authorizing the settlor not only to revoke the trust in part by withdrawing a part of the trust property from the trust . . . but also to modify the terms of the trust . . ."

And then in Bogert on Trusts, Volume 4, Part 2, §996, page 463, the rule is simplified as follows: "A power to revoke includes impliedly a power to alter, unless the power is stated to be merely a power to cancel the trust as a whole."

The lower court, in giving effect to Mrs. Schautz's expressed intention to exclude her two children Walter

and Arthur from the benefits of her estate, would have Mrs. Schautz demolish the entire structure of her settlement and then build anew, but, as we have seen from the above authorities, such demolition and reconstruction are not necessary unless the settlor limits himself or herself to such a procedure by specific language.

Fairness dictates that a person who sets up a trust without consideration should not in the end be regarded as a stranger in the realm of his own benevolence. Words used by him in the creation of the trust are not to become weapons against him unless no other interpretation is possible. Thus, in *Pengelly Estate,* 374 Pa. 358, we held that where the settlor reserves the right to consume the principal, this right may be regarded as the equivalent of a power to revoke, despite a provision in the instrument that the trust is irrevocable without the consent of the trustee. In *Shapley Trust,* 353 Pa. 499, we said that: "We are not prepared to recognize a distinction between settlor's right to withdraw principal from the trust and his right to revoke the trust in whole or in part. Both cause an amendment or partial revocation, and with the same legal effect."

Accordingly, we hold that the instrument executed by Phenie L. Schautz on April 25, 1955 was a legally effective amendment and a modification of the Third Paragraph of the original Trust Agreement and that therefore the court beow properly decreed that the principal and income of the trust estate be distributed to Helen M. Boyle and George J. Schautz, Jr.

Decree affirmed; costs to be borne equally between appellants and appellees.