## Kaufman Estate

*Jerome B. Weinstein*, for accountant.

*Leonard J. Schwartz*, for settlor.

*Elden S. Magaw*, guardian and trustee ad litem, p. p.

KLEIN, P. J., May 24, 1962.—By deed dated January 26, 1951, Earl B. Kaufman delivered to Land Title Bank and Trust Company of Philadelphia, now Provident Tradesmens Bank and Trust Company, certain property described in the schedule annexed thereto, in trust to pay the net income therefrom to himself, for life, and upon his death, to his mother, Fannie S. Kaufman, for life, and upon her death (and she is stated to be now deceased), to pay the principal one-third to settlor's brother, Charles W. Kaufman, and two-thirds to his brother, Richard L. Kaufman, with the further direction that if either of them should be then deceased leaving issue, the trustee should hold the share of such deceased brother in trust to pay the net income to such issue, in equal shares, per stirpes, and as such issue should respectively attain the age

of 25 years, pay to each the share of principal from which he or she had been entitled to receive the income, with further provisions which it does not appear necessary to recite in this adjudication, as a copy of the deed, certified by counsel to be a true and correct copy, is annexed hereto. By paragraph eleventh, the deed provided as follows: "Settlor, having been advised of the effect of this action and having given due consideration thereto, has decided and hereby declares that this Deed of Trust shall be irrevocable and that no provision herein shall be subject to future alteration, amendment or revocation."

Earl B. Kaufman, the settlor, is still living and the trust continues.

As recited above, settlor's mother, Fannie S. Kaufman, succeeding cestui que trust, is stated to be now deceased. His brothers, Charles W. Kaufman and Richard L. Kaufman, entitled to the principal in remainder, if they survive the settlor, are both living and apparently of age and sui juris.

By decree of this court dated November 20, 1961, Elden S. Magaw, Esq., was appointed guardian ad litem for certain minors contingently interested in remainder and trustee ad litem for any unborn issue of Charles W. and Richard L. Kaufman.

At the audit there was presented to the auditing judge a petition by the settlor, Earl B. Kaufman, consented to by his brothers, Charles W. Kaufman and Richard L. Kaufman, requesting the court to terminate the trust because of a mistake of law, or, in the alternative, to terminate the trust partially, pursuant to the provisions of section 2 (a) of the Estates Act of April 24, 1947, P. L. 100, and allow the settlor $25,000 from the principal, in order to carry out the obvious, primary purpose of the trust, and the presentation of such petition was the occasion of the filing of the present account.

In his petition, the settlor avers, inter alia, that:

"3. At the time of the creation of the Trust, Petitioner was employed and was earning a very satisfactory salary and he believed himself to be in a position of reasonable security as it was expected that over the years if his earned income should decrease, the increase in income from the Trust would maintain him.

"4. Petitioner's physical condition and financial condition have deteriorated so seriously since the creation of the Trust that his dependence on the Trust has reached the point where it is now practically his sole source of income and that income has not increased as he had expected and it is totally inadequate to maintain him.

"5. In December, 1958, Petitioner lost his employment by reason of the sale of the business which had employed him, and, since that time, he has been physically incapable of taking employment or engaging in any business activity. Petitioner is 60 years of age, is suffering from severe, painful and disabling arthritis, has been suffering from a severe heart ailment which has affected his general health and, particularly, the use of his legs and arms, and, in November, 1960, he suffered a heart attack. As a result of his physical condition, Petitioner is now compelled to live in Arizona and he is unable to withstand weather conditions in or near Philadelphia for more than the briefest period of time.

"6. The eighty shares of Pennsylvania Range Boiler Company contributed by Petitioner as the corpus of the Trust, upon its creation in 1951, is, apart from the policy of insurance on the life of Petitioner added to the Trust in 1952 and which produces no income, still the only asset in the Trust and the only source of income from the Trust. Pennsylvania Range Boiler Company, a close corporation in which the eighty shares held by the Trust is a small minority interest,

was Petitioner's employer until 1958, when it sold its operating business, changed its name to Kaufman Investment Inc. and thereafter has operated as an investment company.

"7. At the time of the creation of the Trust, the eighty shares of Pennsylvania Range Boiler Company (now Kaufman Investment Inc.) held by the Trust had a book value of approximately $1,600.00,* the present value of these eighty shares is approximately $2,800.00,* and the company is paying an annual dividend which, on the said eighty shares, amounts only to $2,200.00, and none of the increase in the value of the stock, substantially all of which reflects accumulated, undistributed earnings, is available to Petitioner.

"8. Petitioner has no other substantial source of income. Petitioner owns stocks and bonds of the value of approximately $20,000.00, which have been assigned as collateral security to Kaufman Investment Inc. for a loan of $18,000.00 which Petitioner was compelled to make and on which Petitioner is obligated to pay interest at the rate of 3% per annum. Petitioner's only other assets are investments in land in and around Phoenix, Arizona, where Petitioner now resides, which yield no income and which are not saleable at any reasonable price because of the subsidence of land sales activity in the area.

"9. Since the creation of the Trust, Petitioner has married and Petitioner's wife, who is 56 years of age, has no independent income and is dependent on Petitioner for support.

"10. The income from the Trust of $2,200.00 per annum is totally inadequate to provide for Petitioner's minimum household requirements and medical care in his present physical and financial condition.

"11. The Trust was created primarily to provide in-

---

* Per share.

come to Petitioner and his mother upon Petitioner's death as hereinabove recited and was intended to benefit the others named in the Deed of Trust only after the death of Petitioner. The brothers of Petitioner were not and did not regard themselves as the primary beneficiaries of the Trust and, in support of this, they have attached their agreement and consent that your Honorable Court grant the prayer of this Petition, and, if they could legally do so, they would consent on behalf of their issue who will be more than adequately provided for from sources other than this Trust.

"12. Petitioner was advised at the time of the creation of the Trust that it was irrevocable. However, Petitioner believed, as did his two brothers, that this meant that there could not be a unilateral revocation by Petitioner, but all of them assumed that the Trust could be terminated at any time by the joinder of Petitioner, as Settlor, and his two brothers, as remaindermen, adding the joinder of Petitioner's mother if she was then living. None of them paid any particular attention to the inclusion of the 'issue' of the two brothers, assuming that such inclusion would have no application whatever so long as the brothers were alive and that it only had to do with ultimate distribution if the Trust continued to the end.

"13. Petitioner believes and, therefore, avers that the Trust was, insofar as the provision for his brothers' issue is concerned, created by mistake of law on his part, and, consequently, should be terminated upon the joinder of his brothers which is attached to this Petition.

"14. In the alternative and in any event, Petitioner believes and, therefore, avers that the purpose of the Trust is not carried out by limiting Petitioner to payment of income from the Trust for the following reasons:

" (a) It was the intent of Petitioner, in establishing the Trust, that he receive sufficient income to enable

him to meet his living expenses and medical bills.

"(b) Petitioner did not foresee that so long as minimum dividends were paid on the stock held by the Trust, Petitioner could not benefit from the increase in the value of the stock and that such benefit would be solely for the benefit of the remaindermen, which was not his intent."

It will serve no useful purpose to review at length the testimony offered in support of settlor's petition, except to say that it substantially supports the factual situation described by him in his petition.

Since this trust was created in 1951, subsequent to the effective date of the Estates Act of 1947, there is no question that the court has authority under section 2 of the act to terminate the trust to the extent of $25,000, upon proper cause shown. The auditing judge is of the opinion, however, that this would not fairly or justly dispose of the equities of the situation or the needs of the settlor-petitioner. When he created this trust he was unmarried and was employed earning between $35,000 and $45,000 a year. He has since married and is now chronically ill, in debt, without capital and with no income or means of earning anything to support himself or his wife. Under the circumstances, his application is entitled to the court's most favorable consideration.

In Fisher Estate, 26 D. & C. 2d 351 (1962), we discussed at considerable length not only the right of the orphans' court to modify and reform a deed of trust created as a result of mistakes of law and fact, but also the principles of law which dictate that we approach the general problem of giving relief to a person who voluntarily places *his own money* in trust in a benign spirit, so that in the end he should not be "regarded as a stranger in the realm of his own benevolence." See Schautz Trust, 395 Pa. 605 (1959).

What we said in Fisher Estate, is applicable in the present case and need not be repeated here.

The auditing judge is in accord with the suggestion made in the report of Dr. Elden S. Magaw, the learned guardian and trustee ad litem, in which he said:

"Since termination of the Trust in its entirety is within the power of this Court, it would seem desirable, as to the contingent interests, if a compromise settlement of this problem under the Court's equity powers could be decreed between complete termination on the one hand and a maximum award of $25,000 on the other . . ."

A careful study of this entire record leads the auditing judge to the conclusion, and he finds as a fact, that Earl B. Kaufman, settlor, executed the deed of trust dated January 26, 1951, under a mistake of fact and law, erroneously believing that the trust could be terminated at any time upon his request, provided he obtained the consent of his two brothers, Charles W. Kaufman and Richard L. Kaufman. At the same time, the auditing judge believes that it would not be to the settlor's best interest to terminate this trust in toto. His ill health and the apparent improvident and speculative investments he has made in Arizona real estate strongly indicate that entrusting him with the management of the trust property would not be to his advantage. On the other hand, the partial termination, which is now requested by him, would enable him to pay his debts and insure to him sufficient income to meet his living expenses. This would solve his problem and, at the same time, in a limited measure protect whatever interest remains for the minor remaindermen represented by Dr. Magaw.

After careful consideration of the present circumstances and needs of the settlor, the auditing judge is of opinion that the interests of the settlor will be best

served by permitting the trustee to pay from principal immediately the sum of $7,828.75 on account of the principal and interest of the $31,000 mortgage on the 80 acre tract of land in Arizona, in which the said Earl B. Kaufman owns a one-half interest, and by authorizing the trustee to make a similar payment in February 1963, if the real estate is not sold before that date; by permitting the trustee to pay from principal immediately the sum of $5,428.72 on account of the principal and interest of the $112,000 mortgage on the 160 acre tract of land in Arizona, in which the said Earl B. Kaufman owns a one-fourth interest, and authorizing the trustee to make similar payments annually on account of said mortgage until the land is sold, and, if not sold, until the mortgage is paid in full, and by further permitting the trustee to pay to the settlor, Earl B. Kaufman, annually from the principal, the difference between the income earned from the trust and $12,000, to provide for his living expenses, and it will be so awarded . . .

And now, May 24, 1962, the account is confirmed nisi.