## Cobaugh Trust

176

(

*Philip B. Driver, Jr.,* for accountant.

*Michael A. Foley* and *John J. Tinaglia,* for petitioner.

*William C. Ferguson, Jr.,* for *James T. Conneen,* guardian and trustee ad litem.

*James L. Price* and *Murray B. Dolfman,* for Commonwealth.

*Francis Shunk Brown, 3d, Samuel S. Logan, Jr., Montgomery, McCracken, Walker & Rhoads, A. J. Drexel Paul, Jr.,* and *Thomas Hart,* for beneficiaries.

*H. Clayton Louderback, Obermayer, Rebmann, Maxwell & Hippel,* for estate of deceased cotrustee.

KLEIN, P. J., May 11, 1966.—By deed dated October 1, 1958, Elizabeth B. Cobaugh granted and assigned items listed in the schedule annexed thereto to Fidelity-Philadelphia Trust Company and Kenneth G. LeFevre, directing that during her lifetime the trustees "may in their discretion pay part or all of the income" to her daughter, Anne Virginia Alcorn, for life, any income not paid to settlor's daughter to be in trustees' discretion accumulated and added to the principal, or paid or applied by them for the health, support, maintenance, education and welfare of the issue of settlor's daughter. During the lifetime of Kenneth G. LeFevre, settlor directed that such discretion should be exercised solely by him. If settlor's daughter and all of her issue should predecease her, she directed that the trustees should pay the balance of principal and any undistributed income to Fidelity-Philadelphia Trust Company,

to be held in trust as part of the community trust known as the "Philadelphia Foundation", the income therefrom to be used for scholarships at Episcopal Academy and Germantown Academy. After the death of settlor, the deed directed that the entire income was to be paid to settlor's daughter for life, and after her death, or if she should predecease settlor, the principal was to be held in trust for said daughter's children. If said children and their issue should die prior to the distribution of principal under the terms of the deed of trust, the balance of principal was directed to be distributed to the Philadelphia Foundation to be used for scholarships at Episcopal Academy and Germantown Academy. The deed further provided as follows:

"(FIRST) c. During the continuance of the Trusts hereunder, as much of the *principal* as Trustees may from time to time consider desirable for the health of Settlor's said daughter and her issue or *for the education of such issue* may be paid to Settlor's daughter or her issue or else expended by Trustees for those purposes". (Italics supplied).

The present account was filed because of the death on January 20, 1964, of Kenneth G. LeFevre, individual cotrustee, and also because a petition was filed by settlor to terminate the trust, on the grounds that settlor, due to impairment of her vision by cataracts, did not personally read the deed of trust and was not fully apprised of its contents.

The names and interests of all parties in interest appear to be fully set forth in the statement of proposed distribution. By decree of this court dated March 31, 1965, James Conneen, Esq., was appointed guardian ad litem for William George Alcorn, 3rd, a minor, and trustee ad litem for all unascertained persons who might have an interest in the income or principal of the trust.

It is clear that settlor's primary purpose in creating

this trust was to provide for her only grandchild's education and that she consulted Mr. LeFevre, in whom she had faith, to arrange for the preparation of the papers necessary to carry out her purpose. She testified, (page 9):

"A. . . . I said I wanted a will drawn to protect my grandson, to see that he had money enough to go through college at the proper time, as I probably would not be here at the time. He came forward with this idea of the trust fund for the grandson and then the will for the rest of my needs, that was all right".

It is apparent that the gift to charity in remainder was merely a catch-all, inserted to comply with Estate of Spiegel v. Commissioner of Internal Revenue, 335 U. S. 701, decided in 1949, in which the United States Supreme Court ruled that unless there is a complete divestiture on the part of settlor, the trust is taxable in her estate. Thereafter, no informed lawyer or fiduciary would permit a deed of trust to be executed unless settlor divested herself of any possible reverter she might have. Usually, this was done by designating a charity as ultimate remainderman in the event of failure of issue of the named beneficiaries. In the present case, there is little likelihood that the charities will ever come into possession of the remainder, because the probability of settlor's daughter and her child of 12 years dying before settlor, a woman of 84, is remote indeed.

Settlor's approach to her problem was both careful and intelligent. She consulted Kenneth LeFevre, who was an experienced trust administrator, having been an officer of Fidelity-Philadelphia Trust Company for many years. The trust instrument was prepared in the law offices of Morgan, Lewis & Bockius, one of the largest and most respected law firms in the State. William P. Wood, a member of that firm, testified that he prepared the deed on instructions from Fidelity-Phila-

delphia Trust Company, and that he was present when it was executed. Joseph J. Jones, a trust officer of Fidelity, William H. G. Warner, an assistant vice president, and Kenneth G. LeFevre, named individual cotrustee in the deed, were also present when the deed was signed. Mr. LeFevre is deceased, but Mr. Wood and Mr. Warner both appeared as witnesses in support of the valid execution of the trust instrument.

Relying upon the testimony of these witnesses, the auditing judge finds as facts that the provisions of the trust deed were fully explained to settlor, that she knew what she was doing when she signed the document and that the trust instrument fully carries out the intentions she had at the time.

It seems clear, however, that this aged settlor has suffered a change of heart, because she has become irritated, for some reason, with the trustees she selected. Unfortunately, it is much too late for her to change her mind.

The eighth paragraph of the deed provides:

"This Deed of Trust shall be irrevocable. Settlor has been advised of the effect of this action, and after due consideration has determined to make the Trust irrevocable and not subject to future change or revocation".

The language means exactly what it says. In the absence of fraud, accident or mistake, none of which are present in this case, the trust is irrevocable and not subject to change or revocation by settlor. In La Rocca Trust, 411 Pa. 633, 640 (1963), Mr. Justice Eagen, speaking for a unanimous court, said:

"The proof that a mistake actually occurred in the execution of the instrument must still be established by evidence that is clear, precise, convincing and of the most satisfactory character. For an analagous situation, see Pender v. Cook, 300 Pa. 468, 150 A. 892 (1930). See also, Restatement (2d), Trusts, §332, comments b and c. Any other rule would do havoc to

the status of many irrevocable trusts now in existence".
See also Curry Appeal, 390 Pa. 105 (1957); Jones's
Trust Estate, 284 Pa. 90 (1925).

We are not unmindful of what we said in Fisher
Estate, 26 D. & C. 2d 351, 368 (1962), that we must
approach problems of this nature in a benign spirit,
making every effort to give effect to settlor's obvious
intention. See also Schautz Trust, 395 Pa. 605 (1959);
Friedrich Estate, 26 D. & C. 2d 51 (1962); Goodell's
Estate, 53 D. & C. 13, 21 (1945). In the present case,
the trust instrument gives effect to settlor's wishes and
is sufficient to provide a fund for the education of her
only grandchild, William George Alcorn, for whose
benefit the trust was primarily created.

Counsel for settlor has submitted to the parties in
interest a suggested amendment to the deed, which is
objected to by Mr. Conneen, the guardian and trustee
ad litem. Under the amended deed, the experienced
corporate trustee would be discharged and an individ-
ual appointed in its place. Moreover, the ultimate gift
to charity is deleted, and the trustee would be author-
ized to consume principal for any beneficiary, includ-
ing settlor.

Under the provisions of this proposed amendment,
the original purpose of the trust, i.e., the education of
settlor's grandson, would not only be endangered, but
the trust corpus might become subject to Federal estate
tax upon settlor's death.

The trust instrument, which settlor seeks to set aside,
was carefully prepared and gave effect to her clearly
expressed intentions. The trust has been well managed
and has increased substantially in value. Under its
provisions, adequate funds for her grandson's edu-
cation seem to be assured.

The execution of an irrevocable deed of trust is a
solemn, binding act. It cannot be rescinded lightly. It
can only be set aside or altered for compelling reasons.

Otherwise, it could easily become a device for the fraudulent evasion of taxes, creditors and other lawful claims. There is nothing in the present case which would warrant invoking the provisions of section 2 of the Estates Act of April 24, 1947, P. L. 100, because the original purpose of the conveyor is being carried out, and she is well provided for and is not in need of any of the income or principal of this small trust, which represented approximately 10 percent of her total assets.

Settlor's request to terminate the trust, as well as her request to amend the trust instrument, is denied. . .

And now, May 11, 1966, the account is confirmed nisi.