## de Krafft Estate

*Robert L. Bast,* for accountants.

*John S. Dole,* for estate of settlor.

*Henry M. Irwin,* for remainderman.

*Frank Deacon* and *Robert F. Irwin, Jr.,* for trustees under deed of trust.

*Otis W. Erisman,* for life tenants.

KLEIN, P. J., November 14, 1967.—On February 16, 1960, William de Krafft executed two irrevocable deeds of trust, designating the trustees of the Public School of Germantown, also known as Germantown Academy, as trustees. The first trust, which is the subject of this audit, was entitled "William de Krafft Trust" (hereinafter referred to as de Krafft Trust). Under its provisions, the settlor assigned to the trustees Connecticut Turnpike Bonds, valued at $50,000, and New Jersey Turnpike Bonds, valued at $300,000. The second trust, which is also presently before us for audit, was entitled "George Hartley Deacon-William De Krafft Endowment" (hereinafter referred to as Endowment Trust). In this trust, settlor assigned to trustees Connecticut Turnpike Bonds, also valued at $50,000. Each of the deeds provided that the trust shall be administered by three members of the Board of Trustees of Germantown Academy to be elected by the board.

There do not appear to have been any prior accountings in either trust.

The occasion of the filing of the present account was the death of William de Krafft, the settlor, on October 16, 1963, and the resignation of Robert F. Irwin, Jr., one of the accountants herein. Jean Sybil de Krafft,

762

settlor's widow, and Patricia Jean de Krafft, his daughter, are still living.

All parties in interest appear to have had notice of this audit. Compliance with rule of court *55, as amended December 4, 1964, relating to notice to the Attorney General of the Commonwealth of Pennsylvania in cases involving charitable gifts was submitted to the auditing judge.

In paragraph third of the de Krafft Trust, settlor provided, inter alia:

"THIRD: DISTRIBUTION OF INCOME AND PRINCIPAL OF TRUST. Trustees shall hold the property above mentioned, together with all other property which may be transferred to them by Settlor or others, In Trust, to pay the net income therefrom to hold and distribute the principal thereof, as follows:

"I. Trustees shall pay the net income to Settlor for his life;

"II. Upon the death of Settlor the income shall be paid to Settlor's wife, Jean Sybil de Krafft, for and during her natural life;

"III. After the death of Settlor and Settlor's wife eighty percent (80%) of the income shall be paid to Settlor's daughter, Patricia Jean de Krafft, for and during her natural life and twenty percent (20%) shall be paid to the George Hartley Deacon-William de Krafft Endowment, which Settlor has created for Germantown Academy;

"IV. Upon the death of the last survivor of the Settlor, his wife and daughter, the Trustees shall transfer and convey the principal and any undistributed income, absolutely and in fee, to the George Hartley Deacon-William de Krafft Endowment".

Although the trust was, by its terms, specifically made irrevocable, settlor made the following reservation in subparagraph VII of the third paragraph.

"VII. Settlor reserves the right to determine from time to time the percentage of income which shall be paid to the life beneficiaries and that which shall be paid to the George Hartley Deacon-William de Krafft Endowment. Settlor's intention to make any such changes in the payment of income shall be made known by him in writing addressed to the Trustees."

In paragraph third of the Endowment Trust, settlor provided:

"THIRD: *Purpose*: The income from the Trust shall be used solely for the benefit of Germantown Academy and shall be applied towards scholarships, maintenance, furnishings, operating costs and other sound purposes, in such proportion and amounts as may be determined from time to time by the Trustees responsible for its administration. The Trustees shall not be bound to disburse all of the net income arising from the Trust during any particular period nor shall they be limited in their disbursements to the net income of any particular period. They may retain and accumulate the income of the Trust in reasonable amounts and for reasonable periods of time".

In September of 1962, Hon. Jerome A. O'Neill, Judge of the Philadelphia County Court, one of the trustees named in the trust instrument and, at the time, chairman of the Board of Trustees of the academy, visited the settlor at his home in England, where settlor delivered the following holographic writing to him:

"TENTERDEN<br>September 1, 1962

"TO THE TRUSTEES OF
  THE DE KRAFFT TRUST

"Upon receipt of this Letter of Instruction will you transfer to The Deacon de Krafft Trust all of the securities now held in The de Krafft Trust with the exception of Eighty thousand Dollars par value of

Illinois Toll Road Bonds subject however to the conditions as stated hereinafter namely:

"1. All of the Coupons received and held by The Deacon de Krafft Trust as the result of this transfer of securities shall be held as my personal property during my lifetime and thereafter shall become the property of The Deacon de Krafft Trust to be held under the terms of that Trust.

"2. The Coupons upon their maturity during my lifetime shall be delivered to me or to my agent or placed to my credit at my bank.

"3. The Securities to be transferred to The Deacon de Krafft Trust are:

|  | Par Value |
|---|---|
| Illinois Toll Road | $ 20,000.00 |
| Connecticut Highway | 113,000.00 |
| New York State Highway Authority | 112,000.00 |
| Total | $245,000.00 |

"Finally I sincerely thank the Trustees for their most valued service on behalf of and for the benefit of the Germantown Academy.

"EVER,

Signed ———— Wm. de Krafft

"WITNESS:

Elda O'Neill

Jean S. de Krafft

Jerome A. O'Neill"

Counsel for the academy and John S. Dole, settlor's executor and a member of the bar of New York City, vigorously contend that the letter constituted an exercise of settlor's reserved right, under paragraph third, sec. VII, of his deed of trust, to reallocate income between the life tenants and the remainderman and that the direction in the letter to pay income to the endowment after settlor's death effected a completed gift of

corpus to the endowment by operation of law even though the direction in the letter was ineffective to transfer corpus.

Counsel for Jean Sybil de Krafft and Patricia Jean de Krafft, settlor's widow and daughter, respectively, contend, with equal vigor, that although the letter in question was an attempt to revoke partially the provisions of the trust instrument, it was invalid as such, and should have been disregarded by the trustees.

In approaching this problem, we should keep before us several salient facts which are not in dispute:

1. The settlor was extremely active at Germantown Academy for many years. He served as a member of its board of trustees and was trustee emeritus at the time the writing in question was executed. His father died when he was a small boy, and it appeared that his opportunity for receiving an education was extremely limited. Through the interest and kindness of George Hartley Deacon, who taught mathematics at the school for 40 years, the settlor was enrolled at the academy and was educated free of charge. He was grateful to the school for the rest of his life and most generous in his gifts to it. In fact, according to the testimony, "Germantown Academy became his prime love".

2. On September 1, 1962, when the letter to the trustees was signed, settlor was in England and the original trust deeds were in this country and not available to him.

3. All of the investments in the trust portfolio were coupon bonds and the only income received from the trust was in the form of coupons from these bonds.

Our Supreme Court has stated on too many occasions to enumerate here that the "polestar" long fixed for the guidance of courts in interpreting wills and other instruments creating trusts is the intention of the testator or settlor. Mr. Chief Justice Bell, in Burleigh Estate, 405 Pa. 373 (1961), has summarized the

basic rules of interpretation in the following language:

"The pertinent principles of law are well settled; their application is sometimes difficult.

"It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626, Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197".

It is clear from a study of the entire record in this case that the de Krafft Trust deed and the Endowment Trust deed formed part of one joint over-all dispositive plan of settlor to benefit himself, his wife, his daughter and, principally, Germantown Academy, because the entire corpus, of both trusts, was eventually to vest in Germantown Academy as a perpetual charitable trust. It, therefore, follows that in order to ascertain William de Krafft's intent in the present case, we must also study the Endowment Trust instrument in conjunction with it.

The two trust instruments are both irrevocable and in many respects are identical, settlor having used exactly the same language in most provisions of both deeds.

The only right reserved by the settlor in the trust instrument in the present case was the right "to determine from time to time the percentage of income which shall be paid to the life beneficiaries and that which shall be paid to the George Hartley Deacon-

William de Krafft Endowment". The settlor further provided that his "intention to make any such changes in the payment of income shall be made known by him in writing addressed to the Trustees". Common sense, therefore, dictates that settlor, in giving written instructions to his trustees concerning the trust, must have intended to exercise this reserved right. To construe the letter otherwise would require us to assume that settlor's act was a nullity, when it seems obvious that he wished to increase the benefits payable to the academy, which obviously was the favored object of his bounty in these two trust instruments.

Testamentary writings must be construed, if possible, to give effect to all of the language used by the creator of the trust, and a construction which renders any of his directions or words nugatory or ineffectual must be rejected. See Vandergrift Estate, 406 Pa. 14, 26 (1962). See also Hollenbaugh Estate, 402 Pa. 256 (1961); Collins Estate, 393 Pa. 519 (1958). Moreover, it is the court's duty, if reasonably possible, to construe written instruments so as to make them legally effective: Schellentrager v. Tradesmens National Bank and Trust Company, 370 Pa. 501, 505 (1952); Wright's Estate, 284 Pa. 334 (1925).

A most significant factor in this case is the circumstance that settlor was in England when the letter of instructions to the trustees was written and he did not have copies of the two deeds of trust before him. The auditing judge believes that he is justified in assuming that it was for this reason that his directions did not completely meet the technical requirements of the original trust instrument. However, it is obvious that he did know that he had reserved a right under the deed to change the benefits to which the income beneficiaries were entitled, and by his act of writing the letter he was endeavoring to exercise this reserved right. The absence of the trust instrument makes his

reference to the transfer of securities understandable, even though it is clear that he intended his act to constitute a transfer of income, only.

There is another unusual circumstance in this case which strongly supports the position of the academy. All of the holdings in the de Krafft Trust were coupon bonds. Hence, all of the income was represented by the coupons. Accordingly, it was natural for the settlor to regard the word "coupon" as synonymous with the word "income". By transferring the bonds from the de Krafft Trust to the Endowment Trust and retaining for his own benefit for the term of his life the "coupons" or "income" on the bonds being transferred he was, in effect, expressing his clear intention that the income to be received by his wife and daughter from the de Krafft Trust was to be restricted to the income earned on Illinois Toll Road Bonds in the principal amount of $80,000.

If the power to change the interests of the income beneficiaries had been vested in William de Krafft by the will of someone else, he would have been under a duty, certainly, to observe strictly its provisions and limitations in exercising the power. In Schede Estate, 426 Pa. 93, filed by Mr. Chief Justice Bell on June 30, 1967, the Supreme Court quoted with approval the following language taken from Judge Gest's opinion in Price's Estate, 27 Dist. R. 561 (1918):

"The donor of a power, inasmuch as he is disposing of his own property, may prescribe whatever ceremonies he pleases for its execution; and although these may be perfectly arbitrary, yet, being required by the creator of the power, they can be satisfied only by a strictly literal and precise performance of them: Slifer v. Beates, 9 S. & R. 166, at page 181; Rutland v. Wythe, 10 Cl. & Fin. 425".

In the present case, a different situation exists, since the trust res consists of settlor's own property, voluntarily placed in trust by him. In such circumstances, the courts must approach the problem in an understanding spirit, making every effort to give effect to settlor's apparent intention. See Friedrich Estate, 26 D. & C. 2d 51 (1962) ; Goodell's Estate, 53 D. & C. 13, 21 (1945). See also Schautz Trust, 395 Pa. 605 (1959).

It would be extremely difficult to attribute any other logical intention to settlor's act in sending the letter of instruction to the trustees. Under any circumstances, the Endowment Trust would ultimately receive the entire trust res of the deKrafft Trust. The settlor could not change this, because the trust he created was irrevocable. The power he reserved was limited to changing the income distribution. Unless the letter in question was construed by the trustees to be meaningless, we must conclude that by directing the transfer of principal he was only intending to accelerate the time when the academy would receive the income from the bonds he directed to be transferred. See Bruch's Estate, 185 Pa. 194 (1898), in which the Supreme Court, at page 197, stated that "the income is a certain incident of the principal, and necessarily goes with it". See also Henderson's Estate, 323 Pa. 305, 310 (1936), in which the court ruled that where the holder of a power to appoint income from a trust among designated charities, in exercising the power, said "the following to receive said Trust Fund," intended by the use of the language "to include . . . all of the income arising therefrom".

The auditing judge accordingly concludes that the accountants properly construed the letter of instruction from settlor, dated September 1, 1962, as a direction, intended to be made pursuant to and under the power reserved by the settlor in paragraph VII of

article third of the deed of trust, as recited in the statement of proposed distribution, and will confirm the account as stated.

By paragraph third, subparagraph V, settlor provided as follows:

"V. Trustees, subject to the following proviso, shall invest the principal in securities, the principal and income of which are free to the fullest extent practicable, from all taxes, including but not limited to Federal, State, and Municipal income and personal property taxes. If any property, including the original property transferred to Trustees, is not free from income and personal property taxes, Trustees shall sell the same and, to the extent practicable, invest as aforementioned; Provided that Settlor shall have the right to direct that investments shall be made in whole or in part in taxable securities but the selection of such securities shall be made solely by Trustees".

The statement of proposed distribution also requests the auditing judge to determine whether, after the death of William de Krafft, by reason of the fact that the Public School of Germantown, also known as Germantown Academy, the beneficiary of the trust, is a charitable institution under section 501 of the Internal Revenue Code of August 16, 1954, 68A Stat. 163, as amended, the accountants are authorized and empowered to invest in securities other than "municipals or similar tax-free investments". The statement of proposed distribution suggests that it is the accountants' position that they were so authorized and empowered, and as none of the parties in interest have objected to the position taken by the accountants, and since the settlor is now deceased and the academy, which is the principal beneficiary, is a tax-free charitable institution, no useful purpose would be served by now limiting the trust portfolio to securities not subject to taxes. The auditing judge accordingly con-

firms the interpretation suggested by the accountants in the statement of proposed distribution . . .

And now, November 14, 1967, the account is confirmed nisi.