## Bayuk Trust

*Fox, Rothschild, O'Brien & Frankel,* for accountants.
*Leon J. Obermayer,* trustee ad litem, p.p.

KLEIN, J., April 11, 1969.—By deed dated March 24, 1932, Edward Bayuk, settlor, transferred and paid over to The Pennsylvania Company for Insurances on Lives and Granting Annuities (now The First Pennsylvania Banking and Trust Company), Jerome J. Rothschild and Harvey L. Hirst, certain property, in trust, to pay over the net income to settlor for life, and he reserved the right, upon his death, to appoint by will, the balance of the principal remaining in the trust to his wife, his issue, his sisters and their issue, and in the event of the want or failure of such appointment "to the persons who would have been entitled thereto under the intestate laws had the settlor died seized and possessed thereof, and had the same been part of his estate".

The deed is stated to be irrevocable and contains a spendthrift trust provision.

The present fund was awarded to the accountants by adjudication of Bolger, J., dated January 11, 1940, on which date he appointed Edward Bayuk, the settlor, and Constance B. Bayuk, his wife, substituted trustees in place of Jerome J. Rothschild and Harvey R. Hirst.

The reason or purpose of the filing of the present account is stated to be the death of Constance Bayuk, cotrustee, on January 4, 1968. By decree of this court dated June 6, 1968, Robert J. Bayuk was appointed substituted cotrustee in place of Constance Bayuk.

The settlor has filed with the court a petition for leave to amend or reform the inter vivos deed of trust created by him, in order to broaden the power reserved by him to appoint by will. He proposes to do this by amending paragraph second of the deed of trust to pro-

vide that the special power of appointment contained therein be changed to a general power of appointment and will henceforth read as follows:

"*Second*. Upon the death of the Settlor, to transfer, convey and pay over the principal of said trust fund to such person or persons, in such proportions and by such estates as the Settlor may by his last will direct and appoint; and for want or failure of such appointment, said principal shall be transferred and paid over to the persons who would have been entitled thereto under the intestate laws had the Settlor died seized and possessed thereof, and had the same been part of his estate".

Settlor's two sisters, Eleanor Green, who is 65 years of age, and Beatrice Berg, who is 63, have joined in the prayer of the petition. They are both childless.

Notice of the filing of the account and the petition to amend the deed of trust has been given to all of settlor's next of kin now living and no objection has been made by any of them to granting petitioner's request.

By decree dated October 15, 1968, Leon J. Obermayer, Esq., was appointed trustee ad litem to represent the possible unborn issue of settlor's heirs-at-law in the present proceedings.

The present value of the trust principal is approximately $350,000. When the trust was created in 1932, Edward Bayuk was 25 years of age and unmarried. Three years later, in 1935, he married Constance Lewis, who had a son, George Curtis Lewis, III, who was about 9 years of age at the time. George was raised by the settlor, who paid for his support and education. He is now married and has one daughter. The settlor testified, p. 6,

"Q. Did you understand the provisions of the paragraph which limited your power of appointment?

"A. Well, I thought I did, but I guess I made a mistake, because now I find I am unable to provide for my stepson and my granddaughter, whom I regard as my

own flesh and blood. I can't even leave money to charities and only to my two sisters, who are very well provided for themselves; so I really haven't the power of appointment as I would like and thought I had because of the limitations that are in this deed".

Counsel for the settlor contends that the instant case is squarely controlled by Chase Trust, 7 D. & C. 2d 519, in which the facts are strikingly similar. In that case the settlor by irrevocable deed executed in 1931, provided for income to himself for life and at his death the principal to go to such persons as he might appoint by will, but in default of such appointment to his heirs under the intestate laws. As in the present case, the deed contained spendthrift trust provisions. Settlor filed a petition to terminate the trust. We held that by reason of the fact that the trust was created prior to the enactment of the Act of July 15, 1935, P. L. 1013, which modified the application of the rule in Shelly's case, the settlor had created a fee in himself and then superadded a power to dispose of principal by will. In reaching this conclusion we referred to Bowers' Trust Estate, 346 Pa. 85 (1943), which held that a settlor cannot effectively create a spendthrift trust for his own benefit to preclude the rights of creditors. Accordingly, we granted the petition to terminate the trust.

Mr. Obermayer, the trustee ad litem, in a carefully reasoned report, concurred with the position taken by the settlor and recommended that his petition to amend Paragraph Second of the deed of trust be granted.

In Chase Trust, supra, we discussed the law pertaining to the termination of trusts at considerable length and reviewed the applicable decisions in detail. It would serve no useful purpose to repeat here what we said there. Although settlor in the present case asks not for the termination of the trust but only for its amendment, we believe the same principles apply.

There is, however, a second valid reason that settlor's request to reform the trust should receive the court's favorable consideration. Settlor was 25 years of age when he created this trust. He was unmarried and had just received a substantial sum of money under terms of his father's will and he did not regard himself as sufficiently experienced to manage the money by himself. He therefore created this trust designating as trustees the bank which had handled his father's estate and two of his father's very good friends, one being president of the family business, and the other the family lawyer. Obviously, the purpose of the trust was to protect the settlor against his own inexperience and possible improvidence and at the same time to permit him to leave the money to his family by will. It is clear that the situation which has actually arisen was not contemplated by him or explained to him. His closest family members now are his stepson, whom he raised as if he were his own son and the stepson's daughter, both of whom, the settlor regards as his own flesh and blood. Yet he finds himself in a straight jacket, bound by the rigid, inelastic terms of the instrument he executed in his youth, which prevents him from naming them as the objects of his bounty. We repeat what was said by the late Justice Musmanno, in Schautz Trust, 395 Pa. 605, at page 612 (1959) :

"Fairness dictates that a person who sets up a trust without consideration should not in the end be regarded as a stranger in the realm of his own benevolence. Words used by him in the creation of a trust are not to become weapons against him unless no other interpretation is possible".

We, therefore, hold that the trust deed was executed by Edward Bayuk, the settlor, under a mistake of fact, and that the object he intended to achieve by creating the trust was frustrated by reason of this mistake. We are supported in this view by the Restatement, Trusts,

§333 (a) and Scott, Trusts, §333.4. See also Boies Trust, 15 Fiduc. Rep. 311, and the cases cited therein.

For all of these reasons, the settlor's request to amend paragraph second of the deed of trust, as hereinbefore set forth, is granted.

In reaching this conclusion, we hasten to add that we mean no disrespect to Jerome J. Rothschild, the attorney who, we are informed, prepared the trust deed. Mr. Rothschild was one of the most careful, skilled and respected members of our bar. However, it appears that the unusual situation which actually occurred in this family, was neither contemplated by him nor discussed with the settlor. It was a natural mistake which could be made by even the most experienced probate practitioners. . . .

And now, April 11, 1969, the account is confirmed nisi.