## Shapley Trust

Argued November 28, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

E. C. Shapley Highley, with him Highley & Semans, Edwin W. Semans and Shoyer, Rosenberger, Highley & Burns, for appellant.

Craig M. Sharpe, with him Shippen Lewis and Joseph Klapp Nicholls, for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 25, 1946:

The question raised by these appeals is whether this *inter vivos* deed of trust is testamentary. In a carefully considered adjudication and opinion the court below answered the question in the negative.

The deed and its amendment transferred a fund to a named trustee, with active duties, to pay the income to settlor for life and *"in addition thereto so much of the principal thereof . . . as I may in writing from time to time request"* and at settlor's decease to transfer the corpus to named beneficiaries. Settlor reserved the right to revoke, alter or amend, in whole or in part. A will, dated some nine years after the date of the deed, made a different disposition of settlor's estate than that provided in the deed for the distribution of the trust fund.

We need not restate what has been so accurately written in the court below concerning the line of demarcation between a valid *inter vivos* trust and one which is testamentary in character. It will suffice to say that where the deed vests a present interest in the bene-

ficiaries it is a valid *inter vivos* trust. It is not rendered testamentary in character because the settlor reserves a beneficial life estate, and in addition, a power to revoke or modify in whole or part. See *Windolph v. Girard Trust Company*, 245 Pa. 349, 91 A. 634; *Beirne v. Continental-Equitable Title & Trust Co.*, 307 Pa. 570, 161 A. 721; *Fidelity Trust Company, Admr., v. Union National Bank of Pittsburgh et al.*, 313 Pa. 467, 169 A. 209; *Reese's Estate*, 317 Pa. 473, 177 A. 792; Section 57 (1) Restatement, Trusts; Scott on Trusts, Section 57.1.

Where, however, settlor in addition to the reservations above mentioned, reserves the power to control the trustee as to the details of the administration of the trust, and thus makes the trustee merely the agent of the settlor, the scheme becomes testamentary as to dispositions intended to take effect after death. See *Turner v. Scott*, 51 Pa. 126; *Frederick's Appeal*, 52 Pa. 338; *Rick's Appeal*, 105 Pa. 528; *Beaumont's Estate*, 214 Pa. 445, 63 A. 1023; *Hurley's Estate*, 16 D. & C. 521; Section 57 (2) Restatement, Trusts.

Appellant concedes the accuracy of this classification. She maintains, however, that the *inter vivos* trust was invalid as such, and became testamentary, solely because settlor superimposed *a reservation of the right to withdraw principal*. So far as we are aware, no such distinction has been recognized in any reported case in this Commonwealth. Appellant, in her paper book suggests what she deems the law should be: "Settlors and trustees . . . may accomplish all that they may reasonably expect by an *inter vivos* deed of trust, if the law limits them to the reservation of the right to income and the right to revoke." It is argued that the right to withdraw funds renders the trust a mere agency account, from which settlor could withdraw principal as conveniently as from a savings account.

The sole support for such contention is found in Bogert, Trusts and Trustees, Vol. 1, section 104, page

341. This author comments that "while the courts have been extremely liberal in construing instruments *inter vivos* to be valid deeds and not invalid attempted wills, it is believed that they should draw a line somewhere." He recommends that the distinction should be recognized. He says "There does seem to be a real difference between taking the principal under the trust, without affecting its existence, and revoking the trust and thereafter consuming the capital sum." It is stated that if it should be decided that these two processes are in legal effect the same, the remedy should be to change, by statute. Professor Scott in his Law of Trusts, Vol. 1, section 57.2, page 343, holds to the contrary. He says: "This distinction would seem to be rather finespun." In footnote 10, it is stated: "To the effect that it is immaterial whether the settlor reserves a power to revoke the trust or power to require the trustee to transfer the trust property to him at his request, see Keck v. McKinstry, 206 Iowa 1121, 221 N. W. 851 (1928) ; Davis v. Ney, 125 Mass. 590, 28 Am. Rep. 272 (1878) ; Jones v. Old Colony Trust Co., 251 Mass. 309, 146 N. E. 716 (1925)."

We are not prepared to recognize a distinction between settlor's right to withdraw principal from the trust and his right to revoke the trust in whole or in part. Both cause an amendment or partial revocation, and with the same legal effect. For example: if a settlor placed $100,000 in an *inter vivos* trust, with all the reservations hereinbefore discussed, and subsequently concluded to reduce the trust to $50,000, there would seem to be no difference in principle if settlor by written instrument revoked or modified the trust by reducing it by one-half, or exercised his right to withdraw one-half from the operation of the trust. Furthermore, we have recognized the validity of tentative trusts: *Scanlon's Estate,* 313 Pa. 424, 169 A. 106; *Bearinger's Estate,* 336 Pa. 253, 9 A. 2nd 342; *Pozzuto's Estate,* 124 Pa. Superior Ct. 93, 188 A. 209; Section 58 Restatement, Trusts.

503

Where a person makes a deposit in a savings account in a bank in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor *as to any part remaining on deposit on his death if he has not revoked the trust.*

Our decision in *Onofrey et al. v. Wolliver et al.,* 351 Pa. 18, 40 A. 2d 35, did not affect any of the foregoing legal principles. By the *written* portion of the contract, which prevailed over the *printed* portions, nothing in the bank account passed to the daughters until after the death of the mother, who in the meantime retained full ownership over the fund. This was a different situation from that presented in *Lewis' Estate,* 139 Pa. Superior Ct. 83, 11 A. 2d 667, where a present joint account was created, but enjoyment postponed until the death of one of the parties.

We agree with the court below that the lodging of a certified copy of settlor's probated will by the executor of the estate of the settlor was not a compliance with paragraph four of the deed concerning the manner of its revocation, alteration or amendment. The will did not in terms provide for the revocation of the deed. The right to revoke was limited to a "proper instrument or instruments in writing executed by me and lodged with the Trustee." The clause clearly indicates that the revoking writing referred to meant not only be executed by the settlor but meant also be lodged by *her* with the trustees. The method of revocation provided by a deed must be strictly followed: *Reese's Estate,* 317 Pa. 473, 177 A. 792; *Hacker's Appeal,* 121 Pa. 192, 15 A. 500.

The decree of the court below is affirmed at the cost of appellant.