## Vederman Estate

Before Sinkler, P. J.; Klein, Bolger, Hunter and Lefever, JJ.

*J. Pennington Straus*, for *Schnader, Harrison, Segal & Lewis*, for exceptant.

*Philip A. Bregy*, for *MacCoy, Evans & Lewis*, contra.

LEFEVER, J., November 9, 1951.—The issue in this case is whether an "Agreement", dated March 19, 1945, between Louis Vederman, as "Settlor", and designated trustees, was testamentary in character so as to make the balance of the principal held by the trustees at settlor's death on December 9, 1949, a part of his estate.

The settlor left a will in which he stated:

"I have made no provision in this, my will, for my wife, Anna H. Vederman, or my daughter, Lorraine

Vederman, for the reason that they have been provided for from other sources to such an extent that they will not be in need at any time and that they should be able to maintain themselves in comfort for the remainder of their lives . . ."

In contrast, it appears that "Mrs. Vederman never received a penny from this decedent". "Mrs. Vederman does have some estate of her own, which she received entirely from her own family. She is limited to the income from it and does not own nearly enough to support herself and her daughter in comfort". She had no knowledge of this agreement until after his death.

The agreement provided, inter alia:

1. That the trustees pay the income to settlor during his lifetime.

2. That at settlor's death, the trustees distribute the entire principal to seven charities.

3. That settlor have the right "at any time or from time to time, without the consent of any person or without notice of any person other than the Trustees, to revoke the trust hereby created in whole or in part, to change the terms or beneficiaries hereof, and to withdraw the whole or any part of Trust Estate A as it may exist at any time . . ."

4. That ". . . the powers given to the Trustees . . . shall be exercised by them only if, as and when directed to do so by the Settlor: and . . . the Trustees may, at the direction of Settlor, purchase any stocks, either common or preferred, bonds, notes, or other securities of any kind even though the same are not of the kind in which Trustees are permitted by law to invest . . . it being the intention of the Settlor that . . . the Trustees . . . shall be unrestricted by the fact that they are retaining or acquiring the same in a fiduciary capacity and their authority in acting upon the Settlor's directions shall be as broad as it would be

if they were acting in their own individual interests. . . . It shall be the duty of the Trustees to act strictly in accordance with the directions of the Settlor and the Trustees shall be under no liability or responsibility for any loss of any kind which may result by reason of any action taken by it in accordance with any such direction . . . it being the intention of the Settlor that with respect to the exercise or non-exercise of said powers or with respect to such holding or retention of securities or property the Trustees shall be under no duty, liability or responsibility except to the extent that they may fail to act in accordance with the directions of the Settlor."

The widow elected to take against the will. There were practically no assets except the balance of principal in the possession of the trustees under this agreement. The widow claimed one half of this balance. The learned auditing judge ruled that the agreement was testamentary in nature and included the assets held under the agreement as part of settlor's testamentary estate, one half of which he awarded to the widow. Exceptions have been filed to the adjudication by three of the seven charities who are remaindermen under the agreement. However, it is conceded by them that with regard to $5,147.29, which was delivered by settlor to the trustees subsequent to January 1, 1948, section 11 of the Estates Act of 1947 expressly applies and, consequently, this portion of the balance of principal held by the trustees was properly a part of the testamentary estate.

Section 11 of the Estates Act of April 24, 1947, P. L. 100, provides:

"A conveyance of assets by a person who retains . . . a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition . . ."

As pointed out in the comment of the Joint State Government Commission:

"This Section preserves for the surviving spouse the right to share in the decedent's assets where the decedent has retained important rights of ownership at death."

The Estates Act is not retroactive and, therefore, is not applicable to this case except with respect to the sum of $5,147.29 mentioned above: McKean Estate, 366 Pa. 192 (1951). However, the Estates Act of 1947 indicates the public policy of this Commonwealth, as expressed by the legislature, to protect the right of the widow in such a situation: Black Estate, 73 D. & C. 86, 92 (1950). Moreover, this policy has been recognized by the Supreme Court in the leading case of Shapley Trust, 353 Pa. 499, 501 (1946), where it was stated:

"It [the trust deed] is not rendered testamentary in character because the settlor reserves a beneficial life estate, and in addition, a power to revoke or modify in whole or part (citing authorities) . . .

"Where, however, settlor in addition to the reservations above mentioned, reserves the power to control the trustee as to the details of the administration of the trust, and thus makes the trustee merely the agent of the settlor, the scheme becomes testamentary as to dispositions intended to take effect after death."

See also Beaumont's Estate, 214 Pa. 445 (1906), and A. L. I. Restatement of the Law of Trusts, §57(2) and (3).

We approve and adopt the finding of the learned auditing judge that:

"The effect of settlor's directions is to make the trustees agents for settlor during his lifetime. The unlimited power of settlor to amend and revoke, the right of settlor to speculate with the funds, and the

other provisions of the deed make it testamentary in nature, and the widow is entitled to her elective share."

A decedent should not easily be able to segregate the bulk of his estate into a separate fund, exercise unlimited control over that fund during his lifetime, and then free it at death from the rights of his wife in favor of strangers. Charitablemindedness is an excellent trait; however, it has been tritely stated that "Charity begins at home". This court will not lightly exclude a widow from her share in her husband's estate no matter how noble may be his objectives or those of his beneficiaries. The widow's claim in such a situation will be viewed by this court in a benign spirit, intent upon protection of her rights. As against strangers who would take substantially all of decedent's assets, every doubt will be resolved in her favor. We are satisfied that this agreement was testamentary in character.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.