Pocock Estate

632

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*John Kennedy Ewing, William H. S. Wells,* and *Irving N. Kieff,* for exceptants.

*A. David M. Speers, Morris Duane,* and *J. Pennington Straus,* contra.

BOLGER, J., December 13, 1957.—This opinion comprehends exceptions to four adjudications, one in the testamentary estate of decedent, and the other three in inter vivos trusts created by Mr. Pocock under deed of trust dated May 19, 1949, as amended. The executors of the will are James J. Pocock, Jr., and Richard H. Pocock, sons of settlor-decedent, and Joseph V. Donohue. The executors are also the surviving trustees under the deed of trust.

Pauline Pearson Pocock, hereinafter referred to as Pauline, a divorced wife of decedent, is pressing two

exceptions: The first is to the application in the adjudication of the principle of marshaling of assets in the insolvent testamentary estate; the second exception is to the learned auditing judge's ruling that the trustees under the deed had the right to establish the escrow deposit of $250,000 face value of Government bonds without the consent of exceptant.

It is fundamental that the assets of the trust were never more than collateral to settlor's personal obligation to pay Pauline her annuity. Nowhere in the trust deed or any of its amendments is there any provision available to settlor or to the trustees to divest Pauline of settlor's personal obligation to pay the annuity throughout her life or until her remarriage. The right in settlor or in the trustees to establish the escrow fund was restricted to "freeing the trust" of any further claim Pauline might have against it, not to divest settlor of his personal responsibility. The parties realize these facts because we find no objection to Pauline's claim under the postnuptial agreement.

There is one lone problem which is largely the basis of both exceptions, whether the trust deed is testamentary. If it be testamentary, then the trust res should be drawn into the testamentary estate rendering them amenable to the claims of creditors and, inter alia, requiring Pauline to share the collateral established for the payment of her annuity with the other common creditor of the insolvent testamentary estate. The learned auditing judge, in deciding that the trust is not testamentary, refused Pauline's claim that she be permitted to continue to receive her annuity from it, but also held that she must apply the escrow fund in determining the extent of her claim against the testamentary estate. For reasons of clarity, we dispose of the exceptions in inverse order.

This deed of trust is not testamentary. The reservation of a power of revocation does not render the trust res amenable to the claims of creditors: Shapley Trust, 353 Pa. 499 (1946). Vested interests are created in others than settlor and all amendments as to income must be approved by one trustee in addition to settlor, while changes in principal devolution require the agreement of all four trustees, of whom settlor was one. No right exists under the deed in the executors or the creditors to draw the res into the testamentary estate for any purpose whatsoever.

The postmarital agreement fixes the rights of both parties to it. As an amendment to the deed of trust, it specifically authorizes, in the rider to paragraph 7, that paragraph 7, which reserves the right of exceptant to proceed against the trust res to collect any defaults by settlor in the payment of the promised annuities, "shall be revoked, cancelled and annulled if and when at any time prior to August 10, 1956, Mr. Pocock or the trustees deposit Government bonds of the face value of $250,000 or other securities of that value satisfactory to Mrs. Pocock. . . ."

For exceptant to now contend that the trustees had no right to deposit the bonds, because that right was purely personal in Mr. Pocock, is fatuous. This right of the trustees extends beyond the death of settlor just as much as exceptant's remedies against the trust survive him. In the amendment to the deed dated August 19, 1952, to which exceptant was not a party, the trustees are directed, if any income of the trust shall at any time be payable to Pauline under paragraph 7 of the marital settlement agreement, to pay all such sums out of the two-thirds shares of the sons, leaving the third share of income to Hazel Pocock free and clear of such obligation. It then provides that should Pauline not agree to this limitation, all claims by her against the trust shall be cleared of the trust

by the deposit of the bonds *by loan arrangement or otherwise*. This provision is solely for the protection of the trust for Hazel Pocock, a marital deduction trust. It does not add one iota to Pauline's rights as defined in her agreement with settlor, nor does it impinge upon her interest in it. Consequently as to Pauline there was no duty imposed upon the trustees to consult her.

The first exception must be sustained. Under the authorities the equitable principle of the marshaling of assets has no application in this insolvent estate because the trust is not testamentary and, therefore, the collateral provided therein by settlor-decedent for his personal obligation to exceptant was not his property at the time of his death, but belonged exclusively to a third party, viz., the trustees under the deed: Emlen's Estate, 333 Pa. 238 (1939). The assertion is made that because the res of the trust were provided by testator, this case is distinguishable from Emlen's Estate, supra, and that the decision unjustly enriches Pauline. We find no such distinction in law or in equity. These assets were irretrievably placed beyond the reach not only of settlor-decedent, but of his executors and creditors. There is no unjust enrichment to Pauline involved as against the other general creditor of the estate, the J. J. Pocock Company, because practically all of the stock of the latter is owned by the trust out of which came the fund established by the trustees and into which, therefore, any award to the Pocock Company would be funneled. Such a result would be most inequitable to Pauline. The latter's first exception, with the concurrence of the auditing judge, Judge Shoyer, is therefore sustained and her claim is allowed in full as actuarily determined, based upon her age at the date of testator's death, and as so found awards are made to her and to the other creditor of the testamentary estate of their pro rata shares of the bal-

ance for distribution, such shares to be set worth in a schedule of distribution to be filed by the accountant.

Exceptions were also filed by the guardian ad litem for minor interests and trustee ad litem for unascertained interests under the deed. The questions raised appear to be whether the guardian and trustee ad litem has any standing to complain of the action of the trustees in establishing the escrow fund without consulting Pauline and whether the trustees abused their discretion in purchasing bonds instead of acquiring them by collateral loan.

The interests represented by the guardian and trustee ad litem are remote and contingent. They consist of what is left of their respective parent's (settlor's sons) shares only in the event that their parents do not survive Hazel Pocock. The extent of these interests is subject to the many and varied demands of these trusts during the life of Hazel Pocock for her benefit as well as for the benefit of settlor's two sons. These demands involve both principal and income. Over and above these objects of Mr. Pocock's consideration is the contractual responsibility of the trust to Pauline. Another important fact is that two of the trustees who made the escrow deposit were settlor's sons and life tenants who willingly sacrificed their own principal interest as well as income by so doing. Their present silence must be taken to indicate their acquiescence in their action. The whole pattern of this trust and the actions of the trustees in administering it require our concluding that these exceptants take cum onere (Mallon's Estate, 345 Pa. 115), and they, therefore, have no standing to complain.

We find no valid reason to support any contention by the guardian and trustee ad litem either that the trustees lacked authority to establish the escrow fund or that in doing so they abused their discretion. The provision in the amendment of August 19, 1952, to

the deed respecting the obtaining of the consent of Pauline to the direction to pay any income to her must be confined to the shares of the two sons of settlor and that if she did not consent to this, then the trustees are directed "by loan or otherwise" to free the trust by establishing the escrow fund. We repeat the direction to set up the escrow fund is clearly for the protection of Hazel Pocock's marital deduction trust. In addition to the language of the amendment of 1952 cited by the learned auditing judge, we must advert to settlor's direction to the trustees in paragraph 4 of the amendment that in establishing the fund "any expense of freeing the trust from such claim shall be borne exclusively by the trusts hereinbefore created for the benefit of the sons of the Settlor". The paramount intent of the amendment of 1952 was to protect Hazel Pocock at the expense of the interests not only of the two son beneficiaries, but of their offspring. Naturally, there was no other source to which the trustees could look to accomplish their purpose. It was not necessary for them to acquire the bonds by collateral loan as contended by the guardian and trustee ad litem.

The discretion of the trustees to so act was prompted no doubt by the time element and more importantly by the rendering of the trust res of dubious value by the loss of the principal asset of settlor's business, the stock of which constituted nearly all of the trust res, immediately after his death. For the trustees not to have acted as they did would have resulted in their having to pay Pauline $25,000 per year from the depleted trust estate, which would not only have absorbed all of the income of the shares of the two sons, but would have jeopardized Hazel's share of income. The simple mathematics of the situation then presented, as revealed by a scrutiny of the accounts, discloses the existence of this exigency. Any impingement upon

Hazel's interest in the trust might have exposed the trustees to a surcharge at Hazel's instance. We find no basis, upon reviewing their action, to hold that they abused their discretion.

For these reasons the exception of Pauline Pearson Pocock to the application of the principle of marshaling of assets is sustained. All other exceptions are dismissed and the adjudication modified accordingly, and as modified confirmed absolutely.