**Camp Trust**

*David L. Levan,* for exceptant.

*G. Fred Steinrock, Daniel G. Rothermel, Charles Locker* and *Donald F. Spang,* contra.

MUTH, P. J., December 29, 1961.—Exceptions have been filed by Helen Freed to our adjudication of July 8, 1961, distributing the corpus of the trust created by Evelyn D. Camp as settlor in accordance with an indenture of trust between her and Berks County Trust Company dated October 4, 1952, as amended by an indenture of trust between the same parties dated July 19, 1957.

The exceptions filed are based upon the contention that the aforementioned indentures of trust do not create a valid inter vivos trust but that the instruments are testamentary in character and that they are subject to the provisions of the last will and testament of the said Evelyn D. Camp.

Settlor in the indentures of trust aforementioned gives unto her trustee, Berks County Trust Company, certain personal property and real estate to be held, managed and invested by it and to pay the net income therefrom to settlor for life in such amounts as the trustee in its sole discretion may deem necessary for her comfort, health, care, maintenance and welfare. Settlor reserved the right to revoke the trust agreement in whole or in part. Upon the death of settlor the corpus of the trust, as provided for in the original trust instrument, is to be used first for the payment of the funeral and burial expenses of settlor and the balance to be divided into two equal parts, one for a daughter, Helen Freed, and the other share for John Thomas Camp, a son of her husband.

By the indenture of July 19, 1957, settlor expressed her intent as follows:

"Whereas the Donor created a Trust by Indenture dated the 4th day of October, 1952 wherein the Berks County Trust Company was named Trustee, which Trust is still in full force and effect and

"Whereas the Donor desires to amend said Trust Indenture to the limited extent of the testamentary provision appearing under 4 of First;

"Now, Therefore, this Indenture witnesseth that the existing Trust Indenture of October 4, 1952 is ratified in its entirety, except the following shall be considered entirely deleted: . . ."

In this instrument it is provided that upon the death of settlor and after the payment of her funeral and burial expenses the balance shall be distributed among certain named beneficiaries, some of the distributions being in trust, including a distribution of a 1/25 share to a friend, Anna Brown.

In our distribution aforementioned there was distributed to the estate of the said Anna Brown the sum of $827.48. The said Anna Brown died March 25, 1960, prior to the death of settlor, and distribution to her personal representative was made upon the basis that her interest in the trust corpus was a vested interest and that distribution of her share of the corpus therefore be awarded to her personal representative. The exceptions as filed charge the court with error in this distribution.

In the indenture of July 19, 1957, after the settlor declared her intent and purpose in executing this agreement, she states that the original trust indenture of October 4, 1952, is ratified in its entirety and in the statement of intent hereinbefore set forth states that it is her desire to amend the original trust indenture to the limited extent of the "testamentary provision" appearing in paragraph 4 thereof. In providing for the distribution of the trust corpus after her death, the trust instrument employs language as "I give and be-

queath". This phrase appears ten different times in the amending trust instrument, including the provision for distribution of a 1/25 share of the corpus to Anna Brown.

Both the original and amending trust instruments are executed by settlor and Berks County Trust Company, trustee.

The exceptant contends that the language employed in the trust instrument of July 19, 1957, gives the said instrument a testamentary character and that a valid inter vivos trust was not created by these instruments.

In addition, the exceptant points out that the trustee has paid to the register of wills of Berks County the sum of $750, Pennsylvania transfer inheritance tax due on the distributions made pursuant to the provisions of the said trust indentures, and that at the audit of the account of the trustee counsel for the accountant stated that the distribution suggested in the trust agreement to Anna Brown be vacated inasmuch as she predeceased settlor and that he considered the said gift to her to have lapsed and become part of the residue.

The exceptant also contends that in executing the indenture of July 19, 1957, settlor "considered" that she had merely made a testamentary disposition in the original trust instrument which she was at liberty to alter at the time she made the indenture of 1957.

Disposition of the exceptions embraces a consideration of the question as to whether or not settlor created a valid inter vivos trust by the two trust indentures aforementioned. It is to be noted that not only is the trustee a party to each of these indentures but there is no evidence that the custody and possession of the trust assets by the trustee was disturbed or that the trustee was deprived of any of its rights to manage, control and invest the trust assets. In fact, during the

existence of the trust the trustee disposed of real estate constituting a portion of the trust assets and apparently managed the trust during the life-time of settlor and continued to do so to the time of accounting.

The original trust instrument reserved unto settlor the power to revoke the trust instrument in whole or in part. There was no provision made for an amendment of the original trust agreement. Nevertheless, we conclude that settlor's indenture of July 19, 1957, was a termination and revocation of the original trust agreement and the creation of a new deed of trust. See Schautz Trust, 8 Fiduc. Rep. 677.

Furthermore, despite the inexpert language employed in the amending indenture of July 19, 1957, wherein settlor employs the terms "I give and bequeath", examining the entire instrument it appears clearly that settlor, as stated in the said trust agreement, intended merely to change the provisions of the said trust agreement insofar as they concerned distribution of the corpus after her death. Such provision does not destroy the nature of the trust and the use of the phrase above-mentioned does not in itself invalidate the expressed intent of settlor in the indenture of July 19, 1957, namely, "to amend said Trust Indenture to the limited extent of the testamentary provision appearing under 4". The use of the term "testamentary provision" in our opinion is of no greater significance than the use of phrase "I give and bequeath" hereinbefore referred to. Similarly, the payment of Pennsylvania transfer inheritance tax is of no probative value in this consideration since the reservation of the income by settlor for life would necessarily subject the corpus of the trust to the payment of transfer inheritance tax.

The exceptant calls to our attention the decision in Chestnut Street National Bank v. Fidelity Insurance, Trust and Safe Deposit Company, 186 Pa. 333. In that

case it appears from the opinion of the court and it was found as a fact that the deed in question was made for the grantor's own personal convenience and that the trustees were to account to her for all they did under the powers vested in them and that no beneficial interest was to vest in her children until after her death. Significantly, the court pointed out that there was no clause of revocation in the deed and that settlor's attention was not called to the fact of the omission of such a clause nor to the desirability of its insertion in case she should wish to make a provision for the protection of any of her children. The court concluded that the case comes within the doctrine expressed in Russell's Appeal, 75 Pa. 269, where the absence of a power of revocation was held to be sufficient in connection with the other facts of the case to warrant a decree setting aside a deed of trust on the ground of mistake. This conclusion was founded upon the belief by the court that had the settlor been advised of the necessity of a provision to protect her children against the demands of creditors she would have insisted upon the insertion of such a provision. Obviously, this opinion is not in point in the matter before us.

The distinction between an inter vivos and testamentary trust is said to depend upon the degree of control which settlor has reserved as to the details of administration of the trust: Tunnell's Estate, 325 Pa. 554. A settlor may retain a life estate under a trust and still create an inter vivos trust so long as the trustee controls the details of the administration of the trust: Windolph v. Girard Trust Company, 245 Pa. 349. Similarly, a power of revocation may be retained (Dickerson's Appeal, 115 Pa. 198) or a life estate in the income (Shapley Trust, 353 Pa. 499). In the latter instance, the Supreme Court of Pennsylvania found an inter vivos trust to exist despite both a life

estate in the income and a right to manage, lease, sell or otherwise dispose of all the trust property in the settlor.

Disposition of this matter rests entirely upon the manifested intent of settlor: Restatement, Trusts, §128. A trust is created only if settlor properly manifests an intention to create a trust: Restatement, Trusts, §23. A trust may be created although settlor reserves a power to revoke or modify the trust or reserves powers with respect to the administration of the trust or although such powers are given to some person other than settlor: Restatement, Trusts, §37. The general rule is that a testamentary trust results where the owner of property purports to create a trust inter vivos but no interest passes to the beneficiary before the death of settlor: Restatement, Trusts, §56. See also Wilson v. Anderson, 186 Pa. 531. Consequently, where the death of settlor is a condition precedent to the creation of an interest of a beneficiary in the trust corpus, a valid inter vivos trust does not exist (Restatement, Trusts, §56), but where an interest in the trust property is created in a beneficiary other than settlor, the disposition is not testamentary and invalid for failure to comply with the requirement of the Statute of Wills merely because settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part and a power to modify the trust and a power to control the trustee as to the administration of the trust (Restatement, Trusts, §57).

Considering, therefore, the declared intention of settlor, the provisions of the indentures of trust and the circumstances surrounding the management and control of the trust property, we conclude that settlor did create a valid inter vivos trust, that the interests of the beneficiaries of the trust vested at the time of the creation of the trust subject to a life estate in

settlor, and that the distributions in our adjudication aforementioned are therefore correct. Consequently, we make the following

*Order*

And now, to wit, December 29, 1961, the exceptions to our adjudication of July 8, 1961, on behalf of Helen Freed are hereby dismissed and the said adjudication is confirmed absolutely.