331 A.2d 209

In re Insurance TRUST Agreement of Oliver M. KAUFMANN, Jr., dated June 12, 1961, as amended August 19, 1963 and September 18, 1963 for Oliver Edgar Kaufmann, and Diane Doolittle Kaufmann.

Appeal of Maria M. KAUFMANN.

Supreme Court of Pennsylvania.

Argued Oct. 9, 1974.

Decided Jan. 27, 1975.

Irving M. Green, Green, Kriss & Ceraso, New Kensington, for appellant.

G. Donald Gerlach, Reed, Smith, Shaw & McClay, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

On June 12, 1961, Oliver M. Kaufmann, Jr., created a revocable insurance trust in favor of his children. He amended the distributive article of the trust agreement on August 19, 1963 and again named his children as the principal beneficiaries. Oliver also executed a second amendment on September 18, 1963, to fulfill an obligation which he had undertaken in a divorce settlement agreement with his first wife, Joan Kaufmann. This second amendment required that periodic payments agreed to in the divorce settlement would, to the extent necessary, be satisfied from trust income and assets in the event of Oliver's death. The second amendment further provided that no future amendment or rescission of the paragraph which gave Joan Kaufmann the first claim to the trust income and corpus, would be effective without her prior written approval.[1] The remainder of the 1961 trust as amended on August 19, 1963, was reaffirmed. As required by the original trust agreement, Oliver signed and delivered both the first and second amendments to the trustee who accepted them.

1. The relevant portions of that amendment are as follows:
 "(D) Notwithstanding the provisions of paragraphs (A) through (C) hereof, from and after the death of the Insured the Trustee shall first pay, out of income to the extent available otherwise out of corpus, such sums from time to time, after the exhaustion of any other assets which may be available, as may be required to fulfill the obligations of Insured as set forth in [the settlement agreement] . . . .
 (E) The Insured covenants and agrees that the provisions of paragraph (D) . . . shall not be amended or rescinded without the written approval of the said Joan Kaufmann first had and obtained."

Oliver subsequently married Maria M. Kaufmann in 1965. In June, 1969, at Oliver's request, his attorney prepared and forwarded a proposal for a restated insurance trust agreement which contained a marital trust benefitting Maria.

On August 17, 1969, prior to a business trip,[2] Oliver drafted, signed and dated the following holographic instrument:

> "To who [sic] it may concern I consider the Wills and Trust Agreement drawn by Reed Smith & McClay as Valid even though not signed should anything happen to me."

Oliver prepared this instrument at his home in Palm Beach, Florida. At the time, the proposed agreement was readily accessible to him. Upon returning to Palm Beach, Oliver took the draft agreement and the statement executed on August 17, 1969, to his place of business. There they remained until Oliver's sudden death in an automobile crash on November 20, 1969. The draft agreement remained unsigned despite written inquiries by Oliver's attorney on October 1, 1969.

Pursuant to the trust agreement of June 12, 1961, as amended by the first and second amendments, the trustees received the insurance proceeds and distributed them to separate trusts for Oliver's two children. From December 1969 until March 1972, the trustee disbursed monthly payments to Joan Kaufmann in accordance with the second amendment of September 18, 1963.

On March 28, 1972, the Mellon Bank & Trust Co. as trustee filed two first and partial accounts for the trusts created for Oliver's two children. On May 2, 1972, Maria Kaufmann, the widow of Oliver Kaufmann, Jr., filed exceptions to both accounts. A hearing was held and the exceptions dismissed. A court en banc affirmed the

---

2. This trip included a visit to Pittsburgh, the business location of both the attorney who prepared the proposed restated trust agreement and the trustee.

chancellor and from that decree this appeal was taken.[3] We affirm.

Appellant asserts three grounds for reversal of the court en banc's affirmance of the chancellor's decrees. The appellant principally contends that the holographic declaration of August 17, 1969, validly modified the trust agreement of 1961, as amended by the first and second amendments. She next asserts that the chancellor erred in refusing to admit certain evidence of Oliver's intent to change the trust in favor of the appellant. Finally, she maintains that the consent of Joan Kaufmann was unnecessary to effectively alter the trust agreement.

■ The original trust agreement, as amended in 1963, states that "[t]he Insured further reserves the right to alter or amend this agreement by a proper instrument in writing, *executed by the Insured and delivered to and accepted by the Trustee.*" (Emphasis added). Pennsylvania and general trust law clearly provide that a revocable or amendable trust can only be revoked or amended in accordance with the terms of the trust. *Damiani v. Lobasco,* 367 Pa. 1, 79 A.2d 268 (1951); *Shapley Trust,* 353 Pa. 499, 46 A.2d 227 (1946); *Reese's Estate,* 317 Pa. 473, 177 A. 792 (1935); Restatement (Second) of Trusts § 331(1), comment *d* (1959). *See also* Restatement (Second) of Trusts § 330(1) comment *j* (1959).

Here, the settlor, Oliver Kaufmann, created a trust that required all amendments to be executed by the settlor and delivered by him to the trustee. In addition, the trustee had to accept the executed and delivered amendment.

■ Appellant would have us hold that constructive execution has occurred and that formal acceptance by the

**3.** Jurisdiction is based on Section 202(3) of the Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.202(3).

trustee was unnecessary.[4] Assuming arguendo that this is so, it remains uncontroverted that delivery was neither accomplished nor attempted. The proposed amendment, together with the instrument of August 17, 1969, remained in the exclusive control of Oliver Kaufmann, Jr. Since no delivery of the proposed amendment occurred, the original trust agreement, as amended in 1963, remains completely effective. *See Shapley Trust*, 353 Pa. at 503, 46 A.2d at 228.

Additionally, evidence of Oliver's intention to effectuate the proposed amendment cannot be introduced to explain or supercede the unambiguous requirements of the trust agreement.[5] *Berks County Tuberculosis Society Appeal*, 418 Pa. 112, 115, 208 A.2d 857, 859 (1965); *Pew Trust*, 411 Pa. 96, 99–100, 191 A.2d 399, 402 (1963); *Beisgen Estate*, 387 Pa. 425, 431–432, 128 A.2d 52, 55 (1956). Intent in such cases is immaterial and the chancellor properly excluded the appellant's extrinsic evidence.

Finally, since the purported modification of the trust was ineffective due to lack of delivery, we need not con-

---

4. Appellant argues that execution is satisfied by reference to the instrument of August 17, 1969. She also maintains that formal acceptance by the trustee is unnecessary since the proposed amendment was prepared by an attorney whose firm also represented the trustee. In view of our resolution of the cases on the grounds of no delivery, we need not rule on the merit of these principles.

5 Consider, for example, the facts in *Shapley Estate*, 353 Pa. 499, 46 A.2d 227 (1946), where settlor created a trust revocable in a manner almost identical to the provisions at issue here. Subsequently, she executed a will which provided a property disposition different from that of the trust. The will was held ineffective as an amendment to the trust. In the present situation, Oliver's intent is far more ambivalent. He did execute the instrument of August 17, 1969. However, he subsequently failed to sign and deliver the proposed amendment to the trustee even though his attorney specifically requested some response to the proposal.

sider whether Oliver needed to obtain the consent of Joan Kaufmann for the proposed amendment to be valid.

Decree affirmed. Costs to be borne by the appellant.

ROBERTS and NIX, JJ., concur in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice (dissenting).

I dissent. The trust in this case was a revocable trust. Except perhaps for sums necessary to fulfill the settlement agreement entered into with his first wife, the settlor, therefore, could have revoked the entire trust. If a trust can thus be revoked, it follows that the settlor can revoke his own declaration as to the manner in which the trust instrument may be altered or amended. The August 17, 1969 instrument, therefore, validly amended the trust agreement to the extent that the rights of the settlor's first wife were not disturbed.

Moreover, the majority states that "evidence [of the settlor's] intention to effectuate the proposed amendment cannot be introduced to explain or supersede the unambiguous requirements of the trust agreement." The majority, however, looks to extrinsic evidence to determine whether the August 17, 1969 signed instrument was valid. If we may not look to extrinsic evidence which would have established that, by signing the August 17, 1969, instrument, the settlor meant to do exactly what he did, how does the majority consider extrinsic evidence to establish that he did not mean for the signed instrument of August 17, 1969, to be effective. The majority uses extrinsic facts to show the possibility that the settlor wasn't serious when he signed the August 17, 1969 instrument, but paradoxically states that the appellant was properly precluded from introducing extrinsic evidence to establish that the settlor was serious. The law cannot go in two different directions on the same issue at the same time.

If all extrinsic evidence is excluded, we are left with a signed instrument amending the trust instrument through incorporation by reference of another document. There is no rule of law that states that an amendment so accomplished is invalid.

The issue of the trustees' "acceptance" might be relevant if the issue before us involved some breach of fiduciary duty by the trustee. There is no such issue. In any event, as previously noted, since the trust was revocable, the settlor had every right to partially revoke the clause concerning the method by which the trust instrument could be altered or amended.