## Hocke Trust

*Max B. Maloney,* for accountant.
*Stephen Toole,* for Shirley Hope.
*James D. Cullen,* for Jean Waters.

WALKER, *J.,* August 11, 1980—This dispute concerns exceptions to the first and partial account and statement of proposed partial distribution of the Northwest Pennsylvania Bank & Trust Company, trustee under an inter vivos life insurance trust created by James N. Hocke. The opposing parties are Jean. L. Waters, daughter of the decedent/settlor, as income beneficiary, and her children, Ronald Waters, Debbie Muroskey, Jack C. Waters and Susan Kroh, remainder beneficiaries, (hereinafter collectively referred to as Waters) on the one hand, and Shirley Hope, stepdaughter of the decedent/settlor (hereinafter Hope), on the other.

On August 17, 1962 James N. Hocke entered into a standard unfunded insurance trust with the Northwest Pennsylvania Bank & Trust Company as trustee and on the following day executed his last will and testament with the residue of his estate distributed by a pour-over clause to the insurance trust. At the time of the execution of the original will and trust, Mr. Hocke was a widower and had one child and several grandchildren. On June 29, 1963 James N. Hocke married Luceil Hocke. The original dispositive provisions of the trust gave a life income to his daughter, Jean L. Waters, with a

remainder interest to his grandchildren and the issue of deceased grandchildren.

On February 4, 1967, several years after his marriage, the settlor of the trust amended it by creating a life estate in his wife, Luceil M. Hocke, preceding the life estate in his daughter but continuing the life estate for the daughter after his wife's death and continuing the provisions for his grandchildren as remaindermen.

Early in June of 1973, Mr. Hocke had physical problems which prompted him to consult his physician. The local physician referred him to a specialist at St. Luke's Hospital in Cleveland and on or about June 20, 1973 Mr. Hocke was admitted to St. Luke's Hospital for test and diagnostic work. On June 23, 1973 while in the hospital, the settlor executed a holographic instrument which is the subject matter of this controversy. That instrument was found in his suit coat pocket after his death. Since the language of the instrument is important the full text of it is attached to this opinion as Appendix A.

On June 26, 1973, while still hospitalized, the settlor suffered a massive heart attack and was transferred to the intensive care unit of the hospital where he died on June 29, 1973. The instrument of June 23, 1973 was accepted and probated as a codicil to the settlor's will and in the accounting of his estate given effect as such. The Northwest Pennsylvania Bank & Trust Company was both executor of the Hocke estate and trustee under the Hocke insurance trust. Since settlor's residuary estate passed under the codicil, it effectively terminated the pour-over provisions of the original will and no assets flowed from the decedent's probate estate to the trust. The trust is, therefore, funded

solely by life insurance proceeds and certain retirement and profit-sharing benefits from Talon Division of Textron, Mr. Hocke's employer.

Decedent's widow took against the will and codicil and in the final account of Mr. Hocke's probate estate distribution was made accordingly to the widow on the basis of her intestate share and the balance to Jean L. Waters and Shirley A. Hope in the proportions specified in the June 23, 1973 writing. Under the theory of either protagonist in this proceeding, the insurance trust continued for the benefit of his widow during her lifetime. Luceil Hocke died June 4, 1975. Upon her death either the trust was terminated and distribution in fee should be made to Jean L. Waters and Shirley A. Hope in a proportion of two-thirds and one-third, or the trust continued for the lifetime of Jean L. Waters terminating at her death with distribution to her children and the issue of any deceased children. For reasons not readily apparent, the present account was not filed until October 3, 1979, something over four years after the death of Luceil Hocke.

The accountant has proposed distribution in accordance with the original trust agreement as amended February 4, 1967 with accumulated income from the date of death of Luceil Hocke passing to Jean L. Waters and the principal to the accountant as trustee under the continuing inter vivos trust. Hope asserts that the writing of June 23, 1973 should be treated as a codicil to the will and as an amendment of the trust instrument and that, therefore, upon the death of the widow who was the life beneficiary, distribution should be made to Mrs. Waters of two-thirds of the estate and to Mrs. Hope of one-third of the estate.

Waters argues that the resolution of this case is

dictated by the principle that a trust agreement which provides a method of amendment can only be amended by compliance with the terms of the trust agreement relating to amendment. This principle was last enunciated in In Re Trust Agreement of Kaufmann, 460 Pa. 24, 331 A. 2d 209 (1975). The language contained in the Kaufmann trust regarding amendment is identical word for word with the language of the trust agreement here under consideration lending credence to the belief that both were copied from the same form book. In Kaufmann the court held that since there was no delivery of the attempted amendment to the trustee in accordance with the terms of the trust instrument, the amendment was ineffective.

Waters also argues that the settlor's intent is not relevant to our consideration citing Kaufmann, supra, and Berks County Tuberculosis Society Appeal, 418 Pa. 112, 208 A. 2d 857 (1965). The latter case applies the longstanding principle that where there is no ambiguity in the words of an instrument, extrinsic evidence as to the intent of the testator or settlor cannot be used to change the clear meaning of the words contained in the instrument. Kaufmann in like manner holds that extrinsic evidence could not be offered to assist the court in determining the settlor's intent where the words of a trust agreement were unambiguous. The words, "Intent in such cases is immaterial," should not be read literally and out of context: Kaufmann, supra, at 29. These cases do not hold that the intent of the testator/settlor is not important to the court. On the contrary, they hold that where the instrument is not ambiguous the intent of the settlor or testator must be determined from the instrument itself and not from extrinsic evidence as to intent. In the instant

case we see no ambiguity in any of the instruments and we would thus agree that extrinsic evidence of his intent has no bearing on the resolution of the problem. However, his intent as gleaned from the instruments themselves has every bearing on the decision.

The authorities are legion concerning the general principle that a testator's intent is the polestar of all interpretation of wills and trusts. In Carter Estate, 435 Pa. 492, 496-97, 257 A. 2d 843 (1969), the court said:

"The law and the legal principles governing the interpretation of wills is well settled. . . . The pertinent principles may be thus briefly summarized: A testator's intent, unless unlawful, shall prevail; that intent shall be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (e) canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain." Lilley Estate, 443 Pa. 1, 275 A. 2d 37 (1971); Benedum Estate, 427 Pa. 408, 235 A. 2d 129 (1967); Dinkey Estate, 403 Pa. 179, 168 A. 2d 337 (1961).

It is clear that the principles applicable to the interpretation of wills are equally applicable to the interpretation of trust instruments: In the Matter of Tracy, 464 Pa. 300, 346 A. 2d 750 (1975). In Benson Estate, 447 Pa. 62, 68-69, 285 A. 2d 101 (1971), the court said:

"Although these [above cited] cases refer to testamentary dispositions, the same principles apply

with equal force to the construction of an inter vivos trust.

"The courts' task in ascertaining a settlor's intent has likewise often been reiterated: 'In order to ascertain the actual intent of the settlor or testator, the Court must place itself in his armchair and consider not only the language and scheme of the instrument but also the facts and circumstances with which he was surrounded; and these surrounding facts and circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property. . . .'" (Citations omitted.)

It has also been held that where two or more instruments relate to a trust, they should be construed together to determine the settlor's intention: Blish Trust, 350 Pa. 311, 38 A. 2d 9 (1944).

The various documents before us in this case cannot be separated into individual pigeonholes and construed independently. We must attempt to discern the testator/settlor's overall intent regarding the distribution of his estate whether it was part of the probate estate or acquired through life insurance contracts, pension benefits or otherwise. The courts of Pennsylvania have long subscribed to the doctrine of incorporation by reference in the construction of wills and trusts. In Clark v. Dennison, 283 Pa. 285, 289, 129 Atl. 94 (1925), it was said:

"While there has been some conflict of authority in the various jurisdictions, the general rule established by the English decisions and followed in the majority of American jurisdictions, including Pennsylvania, is that reference in a will to an extrinsic document or writing incorporates the latter as part of the will itself, provided it is clearly iden-

tified and in existence at the time the will was written."

In Wilson Estate, 363 Pa. 546, 549, 70 A. 2d 354 (1950), an inter vivos insurance trust and a contemporaneous will containing a pour-over residuary clause were executed by the testator. There the court said:

"The deed of trust was clearly identified by the will and referred to by it as being then in existence. The deed thereby became incorporated in the will and formed part of it under the doctrine of 'incorporation by reference'.

"While the beneficiaries under the *will* and under the *deed* are the same individuals, the proceeds from insurance policies were not *thereby* blended with the assets of the estate. The same beneficiaries possess a different status under the will from that under the trust." (Citations omitted.) (Emphasis in original.)

Therefore the fact that the trust is incorporated by reference in the will for the purpose of construction does not blend the assets so that, for example, in the instant case the fact that the widow took against the will would necessitate her taking against the trust. In fact, insurance benefits and employe death benefits, whether payable to a trust or otherwise, are specifically exempted from elections to take against the will. See 20 Pa.C.S.A. §6111(a) (the statute in force at the time of decedent's death) and 20 Pa.C.S.A.§2203(b) (the statute presently in effect). Nor will our present decision affect the taxability of the insurance trust for Pennsylvania inheritance tax purposes as might have been true under Myers's Estate, 309 Pa. 581, 164 Atl. 611 (1933), the holding of which was specif-

ically abrogated by the Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, 72 P.S. §2485-101 et seq. See 72 P.S. §2485-303 and the comment of the Joint State Government Commission in relation thereto.

We are convinced that a proper disposition of this case requires a review of all of the documents executed by the testator/settlor and a determination from those documents of his intent concerning the disposition of the assets that would be available to his executor and his trustee at the time of his death. In order to give effect to all of the language contained in the instrument of June 23, 1973, we must conclude that the settlor intended to modify the trust as well as the will. The will itself contained no reference to any beneficiaries but simply poured over the probate estate into the trust.

In paragraph 3 of the June 23, 1973 writing, Hocke said: "[T]hat portion of my will which disposes of the residue of the estate after the death of my wife, Luceil M. Hocke, is changed to read as follows." Obviously there was no portion of his will which in fact either referred to his wife, Luceil, or disposed of the residue after her death. No effect can be given to that language unless it is construed to modify the trust.

The last sentence of paragraph 3 says: "The remaining assignments for provision to grandchildren is deleted." Again there is no provision for the grandchildren in the will itself but only by incorporation of the trust therein. This language could have no meaning unless it was the testator/settlor's intent to modify the trust. We hold, therefore, that where, as here, there is a clearly manifested, unambiguous intent on the part of a decedent to affect the distribution of his overall estate in a certain

manner, that intent must be honored by the court even though he may not have understood the precise legal manner by which to accomplish his intent.

In this day of complete estate planning, it is the rule rather than the exception that the disposition of an estate will be governed by multiple instruments in the nature of trusts, inter vivos gifts, wills and the like, all of which must be fitted into position in order to accomplish the disposition of an estate and minimize the tax ramifications of the passage of the assets to the ultimate beneficiaries. Many, if not most, individuals do not have the sophistication or knowledge to understand all of the precise legal distinctions between the various instruments their lawyer prepares. Their purpose is to see that all assets pass to the intended beneficiaries thereof in the manner that they desire and with the least possible bite being taken by the tax collector. When such an individual wishes to modify the dispositive plan and does not have his lawyer at his elbow, but leaves behind a clear indication properly executed concerning his desires, the court should give effect to it.

In this case rather than placing ourselves in Mr. Hocke's armchair, we must place ourselves in his hospital room in Cleveland, Ohio on June 23, 1973. He decided to make some provision for his stepdaughter, to make the provisions for his daughter a fee interest rather than a life interest, and to terminate the remainder interests for his grandchildren. His lawyer was in Meadville, Pa., 100 miles away. He obviously recalled the general language of the dispositive provisions of his estate plan and, although he was hospitalized for diagnostic work, had no reason to believe that death was imminent.

Under those surrounding circumstances, he prepared a clear and unambiguous direction concerning his estate plan and signed it. To rule that it was not effective because of a failure to deliver it to the trustee under all of the circumstances of this case would be to obviously thwart his intent.

Trusts of the type here under consideration should be liberally construed in favor of the settlor's control over them. In Schautz Trust, 395 Pa. 605, 612, 151 A. 2d 457 (1959), Mr. Justice Musmanno speaking for an unanimous court said:

"Fairness dictates that a person who sets up a trust without consideration should not in the end be regarded as a stranger in the realm of his own benevolence. Words used by him in the creation of the trust are not to become weapons against him unless no other interpretation is possible."

We do not believe that our Supreme Court intends that cases such as Kaufmann should be extended beyond the facts of those cases to thwart the obvious intent of a testator/settlor in the overall disposition of his assets. In Kaufmann there was no effort made to modify the total dispositive provisions of the estate plan. In Reese's Estate, 317 Pa. 473, 177 Atl. 792 (1935), the attempted modification, within the modifying instrument itself, provided that it was not to be effective until sixty days' notice had been given to the trustee, and the settlor died within the sixty day period. In Shapley Trust, 353 Pa. 499, 46 A. 2d 227 (1946), the court held that a funded inter vivos trust was not revoked by a subsequent will simply because the settlor had reserved the right to revoke, alter or amend the trust instrument and to withdraw principal. The instant case clearly should be distinguished from those factual settings.

We, therefore, make the following

## FINDINGS OF FACT

1. James N. Hocke entered into a valid inter vivos unfunded trust agreement with the Northwest Pennsylvania Bank & Trust Company on August 17, 1962.

2. Said trust was amended by an instrument executed by the settlor and the trustee on February 4, 1967.

3. Said trust was further amended by the writing of June 23, 1973 executed by James N. Hocke.

4. The assets accounted for in the first and partial account and statement of proposed partial distribution of the Northwest Pennsylvania Bank & Trust Company, Trustee for the James N. Hocke Life Insurance Trust, should be distributed two-thirds to Jean L. Waters and one-third to Shirley A. Hope.

## CONCLUSIONS OF LAW

1. It was the intent of James N. Hocke that all assets of his overall estate, including probate assets, life insurance proceeds, pension funds, profit-sharing funds and the like, should be divided in the proportion of two-thirds to Jean L. Waters and one-third to Shirley A. Hope following the death of his widow, Luceil Hocke.

2. The James N. Hocke Life Insurance Trust terminated on June 4, 1975 at the death of Luceil Hocke.

3. The account denominated a first and partial account and statement of proposed partial distribution filed by the trustee should be retitled as the "First and Final Account and Statement of Proposed Final Distribution of the Trustee."

4. The account should be confirmed except as to the statement of proposed distribution.

5. Distribution should be made in accordance with the decree nisi entered herewith.

## DECREE NISI

And now, August 11, 1980, the statement of proposed final distribution contained in the account filed by the Northwest Pennsylvania Bank & Trust Company, as trustee, is amended to read as follows:

## STATEMENT OF PROPOSED FINAL DISTRIBUTION

| | |
|---|---|
| Balance for Distribution | $76,342.85 |
| Distribution of said balance as follows: | |
| To Jean L. Waters | $50,895.23 |
| To Shirley A. Hope | $25,447.62 |

All net income accrued on the trust res since the filing of the account of the Northwest Pennsylvania Bank & Trust Company shall be divided between Jean L. Waters and Shirley A. Hope in the ratio of two-thirds to Jean L. Waters and one-third to Shirley A. Hope. All costs in this matter, including counsel fees paid by the trustee, if any, since the filing of the final account shall be deducted from trust income prior to distribution.

The account of the Northwest Pennsylvania Bank & Trust Company as modified by this decree is confirmed.

The clerk of courts shall notify counsel for all parties of the filing of this adjudication and decree nisi and any party in interest may file exceptions within ten days of such notice in accordance with Pa.R.C.P. 1517 and 1518, relating to equity actions. If no exceptions are filed within said ten day period,

the decree nisi shall be entered as a final decree upon praecipe of any party in interest.

## APPENDIX A

Saturday
June 23, 1973

To whom it may concern

I, James N. Hocke being of sound mind and judgment do make the following changes to my latest will and testament

1. All of my hunting and fishing _____ equipment are to become the personal property of my step son-in-law Robert W. Hope.

2. My boat, motor, trailer and boating accessories are to become the personal property of my step son-in-law Robert W. Hope.

3. That portion of my will which desposes (sic) of the residue of the estate after the death of my wife Luceil M. Hocke is changed to read as follows: The real and personal property is to be turned into cash except for those momentos which may have semeintal (sic) value for either one of them and then divided in the ratio of 66-2/3 percent to Jean L. Waters and 33-1/3 percent to Shirley Hope. The remaining assignments for provision to grandchildren is deleted.

James N. Hocke