2002 OK CIV APP 49

**In the Matter of the Mary Opal E. REID Living Trust.**

**Julie Ann Crosby Baldwin, Plaintiff/Appellee,**

v.

**Ronda Gail Reid McCoy, Kyle McCoy, and Angela McCoy, Defendants/Appellants.**

**Bank One Oklahoma, N.A., a national banking association, Defendant.**

**No. 96,451.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 18, 2002.

---

Joseph K. Goerke, Driskill & Jones, Oklahoma City, OK, for Appellants.

Brett D. Sanger, Holly Hefton, Brett D. Sanger & Associates, P.C., Oklahoma City, OK, for Appellee.

1. The matter stands submitted without appellate briefs on the trial court record See, Rule 13(h), Rules for District Courts, 12 O.S. Supp.1993, Ch. 2, App., and Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App.

Opinion by LARRY JOPLIN, Vice Chief Judge:

¶1 Defendants/Appellants Ronda Gail Reid McCoy, Kyle Reid McCoy and Kelly Cai McCoy Holt Edwards seek review of the trial court's order granting the motion for summary judgment of Plaintiff/Appellee Julie Ann Crosby Baldwin in an action originally commenced by Bank One Oklahoma, N.A., a national banking association and trustee of the Mary Opal E. Reid Living Trust, by which Trustee sought an adjudication of the effect of an amendment to the trust agreement. In this accelerated review proceeding,[1] Appellants challenge the trial court's judgment as affected by errors of both law and fact. Having reviewed the record, however, we find no errors as alleged, and hold the order of the trial court should be affirmed.

¶2 In 1991, Mary Opal E. Reid (Grantor), with advice of legal counsel, executed a trust agreement creating the Mary Opal E. Reid Living Trust (Trust), irrevocable upon her death, but revocable during her lifetime:

The Grantor reserves the right during her lifetime to amend, modify or revoke this trust in whole or in part, at any time or times, by notice in writing delivered to the Trustee, and such amendment, modification or revocation shall be effective immediately upon delivery to the Trustee, except that changes which increase the Trustee's duties or liabilities shall not be effective without its consent.

By the terms of the trust agreement, upon her death, Grantor made small bequests to relatives,[2] and granted the rest and residue of the Trust estate to her son, Donald Reid (Son), and daughter, Ronda Gail Reid McCoy (Daughter), in equal shares.

¶3 In 1994, Grantor executed the First Amendment to the Trust agreement, granting the residual estate to Son and Daughter in equal shares, *but in trust* during their lifetimes. The First Amendment further provided that in the event either Son or

2. Including the McCoy children and Baldwin.

Daughter predeceased Grantor, the deceased child's share passed to his or her issue, free of trust.[3] In 1995, Son died, leaving Julie Ann Crosby Baldwin (Granddaughter) as his only surviving child.

¶4 On January 8, 2000, Grantor died. Four days later, Daughter sent to Trustee by facsimile an untitled and undated document, purportedly a second amendment to the Trust (Second Amendment) executed by Grantor in 1997. By this instrument, Grantor left the entire residue of her estate to Daughter, unencumbered by any reservation in trust.

¶5 Trustee then commenced the instant action, seeking an adjudication of the effect, if any, of the Second Amendment. Shortly thereafter, Granddaughter commenced a separate action challenging the validity of the Second Amendment, and the trial court consolidated the actions for resolution.

¶6 Granddaughter filed a motion for summary judgment, arguing the express terms of the trust agreement reserving to Grantor the right to amend "during her lifetime" required a "notice [of the amendment] in writing delivered to the Trustee" to effect a change in any trust provision, and that the Second Amendment, delivered to Trustee after Grantor's death, was ineffective to amend the Trust. Daughter responded, arguing validity of the Second Amendment, executed during Grantor's lifetime, regardless of the date of delivery to Trustee after her death. Upon consideration of the parties' arguments, the trial court granted Granddaughter's motion for summary judgment, finding the Second Amendment invalid. Daughter appeals.

[1–4] ¶7 As a general rule, the interpretation of the language of a trust instrument constitutes a question of law. *Matter of Home–Stake Prod. Co. Deferred Compensation Trust,* 1979 OK 81, ¶8, 598 P.2d 1193, 1196. The "appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings" *de novo. Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶14, 859 P.2d 1081, 1084; *Corr v. Corr,* 2001 OK CIV APP 31, ¶11, 21 P.3d 642, 644. The courts strive to ascertain and effect the intent of the settlor, but parole evidence may not be considered "[w]here there is no ambiguity and the language of a declaration of trust is clear and plainly susceptible of only one construction[:] the plain provisions of the trust instrument ... determine its construction." *Home–Stake Production Co.,* 1979 OK 81, ¶8, 598 P.2d at 1196; *Corr,* 2001 OK CIV APP 31, ¶11, 21 P.3d at 644.

[5] ¶8 Although we find no Oklahoma authority directly on point with the facts of this case, the Restatement of Trusts recognizes:

> If the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will
>
> . . . .
>
> If the settlor reserves the power to revoke the trust only by notice in writing delivered to the trustee, he can revoke it only by delivering such a notice to the trustee.

Restatement of the Law, Second, Trusts 2d, § 330, comment (j). In this vein, the great weight of authority from other jurisdictions plainly holds that where the settlor reserves the inter vivos right to revoke or amend the trust, and conditions effect of an amendment on delivery of a written notice of the change to the trustee, delivery of the notice of amendment, whether by will or otherwise, after the death of the settlor is ineffective to alter the terms of the trust. *See, e.g., Lourdes College of Sylvania, Ohio v. Bishop,* 94 Ohio Misc.2d 51, 703 N.E.2d 362, 367–370 (Oh.Ct.Cmn.Pls.1997)[4]; *Estate of Lohrie,* 950

---

3. The remainder of the First Amendment left all other terms of the trust agreement essentially unchanged.

4. Under trust reserving to grantor "[t]he ... rights and powers ... during the Donor's life ... at any time or times without the consent or participation of the Trustee or any beneficiary thereof: [b]y an instrument in writing, signed by the Donor and delivered to the Trustee, to revoke ... modify, alter or add to this agreement in any respect whatever," held, "[d]elivery of any amendment [or] modification must be made during the grantor's lifetime in order for such a change to be valid," and amendment undelivered during grantor's lifetime invalid.

P.2d 1030, 1034 (Wyo.1997)[5]; *Estate and Trust of Steve J. Pilafas*, 172 Ariz. 207, 836 P.2d 420, 425 (Az.App.1992)[6]; *Estate of Esther A. Lindstrom*, 191 Cal.App.3d 375, 386, 236 Cal.Rptr. 376, 383 (Cal.App.1987)[7]; *In re Trust of Kaufmann*, 460 Pa. 24, 331 A.2d 209, 211 (1975)[8]; *Love v. St. Louis Union Trust Co.*, 497 S.W.2d 154, 159 (Mo. 1973).[9]

¶ 9 We are persuaded these authorities properly state the law. We consequently hold where the settlor reserves the right to amend a trust during his or her lifetime, and conditions effect of the amendment on a written notice of the change delivered to the trustee, but while living fails to deliver the notice to the trustee, the undelivered amendment is ineffective to alter the terms of the trust. To hold otherwise absent a specific trust provision permitting amendment by will would permit the modification of a trust—although subject to *amendment, modification or revocation during the life* of the settlor—*after* the trust by its own terms became *irrevocable and immutable to change* upon settlor's *death.*

¶ 10 In the present case, the uncontroverted evidence shows no delivery of the Second Amendment to the trustee during Grantor's life, and the Second Amendment is hence ineffective to alter the terms of the trust. The order of the trial court granting judgment to Granddaughter is consequently AFFIRMED.

JONES, J. and BUETTNER, J., concur.

**5.** Under trust granting the "full and complete power to alter, amend, modify or revoke ·this Trust at any time during Grantors' lives, by an instrument in writing executed by Grantors and delivered to Trustee," held, "the [trust] provision requires the revocation to occur during the lifetime of the last of the settlors," settlor's "will was not effective until after his death and cannot have revoked the trust during his lifetime," and "the trust was not revoked by his execution of the will."

**6.** Under trust providing "settlor may at any time or times during the [s]ettlor's lifetime by instrument in writing delivered to the Trustee amend or revoke this Agreement. in whole or in part," held, where settlor's last-executed trust amendments purportedly revoked trust, but could not be found at the time of his death, and no evidence was adduced to show settlor's delivery of amendments to trustee, "the inter vivos trust was not revoked and remained valid."

**7.** Under trust permitting exercise of "[a]ll rights granted to any person by any provision of this trust ... during his or her lifetime and competency," and granting to the settlor the right to amend, alter or revoke "at any time ... by written instrument filed with the Trustee," held, testatrix' "will that was not delivered to the trustee during [her] lifetime ... [did not] revoke or modify [her] trust," and trust beneficiaries entitled to distribution of trust assets in spite of attempted testamentary disposition otherwise.

**8.** Under trust "reserv[ing] [to Grantor] the right to alter or amend this agreement by a proper instrument in writing, [e]xecuted by the [Grantor] and delivered to and accepted by the [t]rustee," held, where "[t]he proposed amendment, ..., remained in the exclusive control of [Grantor]" until his death, and "no delivery of the proposed amendment occurred [or was attempted], the original trust agreement, as amended in 1963, remains completely effective."

**9.** Under trust. "subject to the express condition and reservation on the part of the Grantor to alter or amend the terms of this agreement, or to revoke this agreement in whole or in part, and to free any sums of money, securities or other property from the terms of this trust, at any time during the Grantor's lifetime, upon written notification to that effect duly executed by the Grantor and delivered to the Trustees," held, the "reservation of the power to alter, amend, or revoke the trust and the manner of accomplishment of such purpose is ... clear, complete and unambiguous; and, under such provisions, [Grantor] could alter, amend, or revoke his trust only by written instrument executed and delivered by him *while living* to his Trustee." (Emphasis added.)